[No. F053236. Fifth Dist. Oct. 23, 2008.]

MARY JANE GALBISO, Plaintiff and Appellant, v.
OROSI PUBLIC UTILITY DISTRICT, Defendant and Respondent.

**COUNSEL**

Law Office of Frederick C. Roesti and Frederick C. Roesti for Plaintiff and Appellant.

Law Offices of Michael J. Lampe, Michael J. Lampe and Michael P. Smith for Defendant and Respondent.

**OPINION**

**KANE, J.**—Appellant Mary Jane Galbiso (Galbiso) and respondent Orosi Public Utility District (OPUD) have a long-running dispute relating to the sewer assessments imposed by OPUD against Galbiso's land and the efforts by OPUD to enforce those assessments.[1] The present appeal involves a distinct aspect of the parties' controversy. Specifically, Galbiso filed a complaint alleging that OPUD violated the Ralph M. Brown Act (Gov. Code, § 54950[2] et seq.; hereafter the Brown Act) by the manner in which it conducted meetings and made decisions, and further, that OPUD violated the California Public Records Act (§ 6250 et seq.; hereafter the Public Records Act) by its failure to allow Galbiso access to public records. Prior to trial of these particular claims, the parties reached a settlement agreement in open court. The settlement agreement provided among other things that OPUD

---

[1] The dispute has spawned a number of lawsuits between the parties. In a prior appeal by Galbiso of OPUD's foreclosure action (*Orosi Public Utility Dist. v. Galbiso* (Nov. 9, 2007, F049450) [nonpub. opn.]; hereafter the foreclosure action), we vacated the trial court's decree of foreclosure because the statute under which judicial foreclosure was commenced by OPUD was inapplicable. We also addressed a number of issues raised in that case related to the validity of the assessment. Galbiso's request for judicial notice of our ruling in the foreclosure action is granted. Other lawsuits have apparently been filed, including a damages lawsuit in which Galbiso sued OPUD based on several theories, including the taking of her property without just compensation.

[2] Unless otherwise indicated, all further statutory references are to the Government Code.

would comply with the requirements of the Brown Act and the Public Records Act and would not engage in the type of conduct alleged in the complaint. The issue of attorney fees was reserved to the trial court. Believing she had prevailed on the statutory claims, Galbiso moved for an award of attorney fees under both the Brown Act and the Public Records Act. The trial court denied the motion for attorney fees. Galbiso appeals, contending the trial court abused its discretion. We agree, and will reverse the trial court's order denying attorney fees and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

### A. *Galbiso's Complaint for Declaratory and Injunctive Relief*

On December 20, 2005, Galbiso filed a verified complaint seeking declaratory and injunctive relief against OPUD based on asserted violations of the Brown Act and the Public Records Act. According to the allegations, which we now summarize, Galbiso was the owner of two parcels of land, referred to as Parcels 56 and 57, located within the geographical boundaries of OPUD. She purchased Parcel 56 in 2001 and the adjacent Parcel 57 in 2003. In 1995, OPUD established a special assessment district, known as the Orosi 1995 Sewer Improvement District No. 1, to make improvements to its sewer system to be paid by special assessments against property owners who would benefit from the improvements. Galbiso first learned of the special assessments shortly before completing her purchase of Parcel 56 in 2001. Galbiso believed the special assessments imposed against her property were unreasonable or unenforceable because they were based on a previous owner's proposal to build a multiunit residential complex needing 88 sewer hookups, which proposal had long since been abandoned and the land remained zoned for agricultural use. Further, although OPUD charged her for 88 sewer hookups, it allegedly could not actually provide sewer treatment capacity for that many residential units. After Galbiso's purchase of Parcel 57, OPUD filed a lawsuit to judicially foreclose and sell Parcels 56 and 57 for nonpayment of its special sewer assessments.[3]

Galbiso's complaint in the present case further alleged that at a meeting of the OPUD board of directors[4] held on November 8, 2005, before judgment had been entered in the pending foreclosure action, the members of the board of directors adopted a resolution to sell Parcels 56 and 57 in a tax sale process for nonpayment of special assessments. The tax sale was to occur on

---

[3] This was the foreclosure action that subsequently became the subject of a separate appeal (see fn. 1, *ante*).

[4] Also referred to herein as the OPUD Board or simply the Board.

January 6, 2006. The resolution, referred to as Resolution No. 2005-10, was allegedly prepared—complete with the number of votes cast—prior to the meeting itself.[5]

Based on the above and other allegations, Galbiso's complaint proceeded to set forth the following causes of action:

*First cause of action.* In the first cause of action, Galbiso claimed that Resolution No. 2005-10 and the tax sale authorized thereby were null and void on the ground that the resolution was approved in violation of the requirements of the Brown Act, which statute provides, among other things, that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency . . . ." (§ 54953.) In her prayer for relief, Galbiso sought injunctive relief to prevent OPUD from taking further action to sell Parcels 56 and 57 pending the outcome of the appeal in the foreclosure action.

The specific violations of the Brown Act alleged in the first cause of action included the following: (1) Resolution No. 2005-10 was allegedly moved, seconded and passed (and votes recorded) prior to the November 8, 2005 meeting at which it was supposed to be publicly considered, and the members of the Board admitted at the meeting they never saw the resolution even though their votes were recorded in favor of it; and (2) Resolution No. 2005-10 was allegedly not the proper subject of a private, closed meeting. The first cause of action further alleged that OPUD improperly sought to sell Galbiso's property at a tax sale as a means of avoiding the jurisdiction of the court over the same dispute in the foreclosure action, including Galbiso's right of appeal therein.

*Second cause of action.* In the second cause of action, Galbiso sought injunctive relief to prohibit OPUD from continuing to violate the Brown Act. It incorporated the prior allegations and raised other violations of the Brown Act, including the following: (1) Resolution No. 2005-10 was passed in a summary fashion at the November 8, 2005 meeting without allowing for public comment, in violation of sections 54950 and 54954.3; (2) OPUD refused to let Galbiso speak during the public comment portion of the November 8, 2005 meeting and called the police in an attempt to prevent her from speaking, in violation of section 54954.3; and (3) OPUD held a closed

---

[5] We note that at the time of the November 8, 2005 meeting, OPUD was represented by Attorney J. Patrick Sullivan, who was present and participated at that meeting. A change of attorney was apparently made on or about November 16, 2005, when OPUD retained Attorney Colleen Carlson to act as its general counsel. Attorney Michael Lampe was also retained by OPUD to defend the present litigation.

session on November 8, 2005, regarding the sale of Parcels 56 and 57, but failed to make the necessary public disclosures.

*Third cause of action.* Galbiso's third cause of action alleged that OPUD violated the Public Records Act by denying to her the same access to public documents that other owners of property within the boundaries of OPUD would be entitled to. Specifically, on several occasions OPUD's superintendent, Fred Boyles, denied Galbiso access to records by allegedly ordering her to leave OPUD's office. Galbiso sought an injunction to prohibit OPUD from denying or interfering with Galbiso's right under the Public Records Act to inspect and copy such records.

*Fourth cause of action.* Under the fourth cause of action, entitled "quiet title," Galbiso sought a judgment that she was the owner in fee simple of Parcels 56 and 57, and that OPUD had no right or interest therein.

*Fifth cause of action.* The fifth cause of action for declaratory relief asserted, among other things, that "[t]he disputes between [Galbiso] and [OPUD] over . . . special sewer assessments for which [Galbiso] receives no sewer service is properly before the Court in [OPUD's] action for foreclosure and sale in *Orosi v. Galbiso,* . . . appeal pending." (Italics added, underscoring omitted.) A judicial determination was sought that "said court jurisdiction cannot be contravened by other attempts by [OPUD] to use other methods to sell Parcels 56 and 57 in contravention thereof." Additionally, Galbiso prayed for a determination that she was the owner in fee simple of Parcels 56 and 57 and that OPUD's lien was invalid. Galbiso's prayer for relief further requested that OPUD be enjoined from taking any action to enforce the special assessments on Parcels 56 and 57.

B. *Preliminary Injunction Issued on February 21, 2006*

On February 21, 2006, the trial court issued a preliminary injunction pending trial of this matter. The preliminary injunction enjoined OPUD from taking any action to commence or proceed with a tax sale of Parcels 56 and 57.[6] The trial court denied the request for preliminary injunction under the Brown Act because Galbiso failed to adequately demonstrate that in the future she would not be permitted to speak during the public comment period at OPUD Board meetings. The trial court granted Galbiso's request that OPUD be required to provide access to its public records, with the exception of records that come within the litigation exception to disclosure under the Public Records Act. The trial court explained the litigation exception was narrow and only applied to documents that were specifically prepared for use in litigation.

---

[6] The trial court prohibited the sale of Parcels 56 and 57 on grounds that were unrelated to the Brown Act or the Public Records Act.

## C. *Demand for Inspection and Production of Maps*

In her cause of action based on the Public Records Act, Galbiso alleged that Fred Boyles denied her access to public records when he ordered her on more than one occasion to leave OPUD's office. By letter of December 14, 2005, approximately one week before Galbiso filed her complaint, OPUD's new counsel, Ms. Carlson, notified Galbiso's counsel, Mr. Roesti, that OPUD would produce documents requested under the Public Records Act, unless exempt from production, provided that Galbiso submitted her document request in writing. According to Ms. Carlson, extensive efforts were made afterwards to respond to various Public Records Act requests by Galbiso. However, it was later admitted by Fred Boyles that he asked Galbiso to leave the OPUD office after Galbiso "repeatedly and loudly requested that [he] produce documents," which he did not produce based on his understanding of "advice of counsel."

On July 11, 2006, Mr. Roesti made a written Public Records Act request to OPUD on Galbiso's behalf, seeking, among other things, plans, drawings, diagrams and maps of the OPUD sewer pipes as they existed prior to and after the formation of the Orosi 1995 Sewer Improvement District No. 1. OPUD responded that all maps, drawings, plans and specifications regarding the Orosi 1995 Sewer Improvement District No. 1 had been made available and OPUD "does not have a specific before and after map." Galbiso then brought a motion to allow the deposition of OPUD's engineer, Dennis Keller, after the discovery cutoff date pursuant to Code of Civil Procedure sections 2024.010 through 2024.060, and the trial court granted the motion. According to Mr. Roesti, Mr. Keller produced a map at his October 2006 deposition that OPUD claimed did not exist (i.e., showing sewer pipes before and after the sewer improvements). The purported map was not part of the record on appeal.

## D. *The Settlement Agreement*

On November 27, 2006, the parties met with Judge Lloyd Hicks in a settlement conference and a settlement agreement was reached in open court. The relevant terms of the settlement, as expressly recited on the record, were as follows:[7]

1. "OPUD agrees not to take any action to commence or proceed with a tax sale of parcels 56 and 57 or to interfere with, encumber, or attempt to enforce any special assessment on parcels 56 and 57 that is subject to judgment on

---

[7] For convenience, we have placed numbers in front of each distinct settlement term. In the original transcript, the numbers were indicated verbally. We have excluded a number of boilerplate provisions of the settlement agreement.

appeal in Orosi versus Galbiso, Tulare County Superior Court case number 03-207142 during the pendency of its appeal."

2. "OPUD agrees that it will not act on any motion or resolution in open or closed session in which the motion or resolution as typed for consideration includes the pre-typed name of the person who will make the motion or resolution, the pre-typed name of the person who will second the motion or resolution, and the pre-typed number of votes in support of the motion or resolution."

3. "OPUD agrees that it will not interfere with, attempt to deny, or attempt to censor [Galbiso's] right to speak as allowed by law at its regular meetings on nonagenda items during the time for public comment and for the amount of time allowed each speaker.

"Pursuant to Government Code section 54954.3[,] comments at special meetings are limited to the subject of the special meetings.

"OPUD and Galbiso agree to conduct themselves at such meetings in accordance with the requirements of the law."

4. "OPUD agrees that it will not interfere with, attempt to deny, or attempt to [c]ensor [Galbiso's] right to speak, as allowed by law, at its regular and special board meetings on agenda items during the time for public comment and for the amount of time allowed each speaker."

5. "OPUD agrees that it will not go into any closed session at a regular or special meeting without identifying the subject of the closed session in its agenda.

"OPUD agrees that it will not interfere with, attempt to deny, or attempt to [c]ensor [Galbiso's] right to speak, as allowed by law, on the subject of the closed session immediately prior to the closed session for the amount of time allowed each speaker."

6. "OPUD agrees that at the end of a closed session, it will immediately reconvene a public session, at which it will announce in public those actions taken which the law requires to be reported out."

7. "OPUD agrees to rewrite its agenda description regarding public comments so that the agenda description clearly notifies the public of the time allowed for comment."

8. "OPUD agrees to allow [Galbiso] access to its public records in accordance with OPUD's public records request policy under the Public

Records Act, unless the record comes under the litigation exemption to disclosure under Government Code section 6254[, subdivision (b)], which only exempts documents specifically prepared for litigation, or unless the record comes within any other exemption allowed by law."

9. "The issue of attorneys fees and costs shall be submitted to the Court in a motion for fees and costs, at which either party may raise any argument for or against fees and costs to Galbiso or OPUD."

10. "Upon determination of the motion for fees and costs, [Galbiso] shall dismiss this complaint with prejudice."

11. "This agreement and the terms of the agreement shall have no other effect on any other litigation between Galbiso and OPUD."

12. "It is expressly agreed that the fact the parties reached this settlement agreement and the terms of this settlement agreement cannot and should not be construed as an admission or indication on the part of OPUD that they have in any way acted in a careless, negligent, or otherwise improper manner or failed to do anything set forth in the allegations contained in the complaint on file in this litigation.

"Galbiso agrees, therefore, this settlement is not and shall not be treated as an admission of liability on the part of OPUD regarding any of the allegations and prayers of the complaint or terms of this settlement in this matter.

"However, it is understood that independent of this settlement agreement, Galbiso and OPUD may, for the purposes of the fee and cost motion, identify by declaration those facts that support or oppose any fee or cost motion."

E. *Galbiso's Motion for Attorney Fees*

On December 19, 2006, Galbiso filed her motion for attorney fees. The motion was made on the ground that she was the prevailing party under the Brown Act and the Public Records Act, and that both statutes have provisions authorizing the recovery of attorney fees to a prevailing party. In support of the motion, Mr. Roesti attached a number of exhibits to his declaration in an effort to establish that Galbiso had in fact prevailed on her claims under the Brown Act and the Public Records Act.

On December 29, 2006, OPUD filed its declarations and points and authorities in opposition to the attorney fees motion. OPUD asserted that Galbiso was not a prevailing party, but merely succeeded in obtaining an agreement by OPUD to follow the law, which OPUD was doing anyway.

OPUD's opposition asserted that it had not violated the relevant statutes in any substantive way, and even if there arguably had been some minor shortfalls, they were cured before the litigation was filed. Thus, according to OPUD, an award of attorney fees under either the Brown Act or the Public Records Act was unwarranted.

The trial court denied Galbiso's motion for attorney fees. The trial court explained at the hearing on January 26, 2007, that it denied a recovery of attorney fees under the Brown Act because no violation had been established. The trial court further explained that it denied a recovery of attorney fees under the Public Records Act because, even though Galbiso prevailed on her denial of access theory, it was not shown that the lawsuit resulted in OPUD releasing a copy of a previously withheld document. Thereafter, Galbiso filed a motion for reconsideration, which was also denied. Galbiso's timely appeal followed.

## DISCUSSION

In her appeal, Galbiso contends the trial court abused its discretion when it decided that she was not entitled to an award of attorney fees under the Brown Act and the Public Records Act. She further contends the trial court abused its discretion when it denied her motion for reconsideration. We now consider these contentions.

I.  *Attorney Fees Under the Brown Act*

We begin with Galbiso's claim that the trial court erred when it denied her motion for attorney fees under the Brown Act.

A.  *Overview of Brown Act*

■ "The Brown Act requires that most meetings of a local agency's legislative body be open to the public for attendance by all." (*Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313, 1321 [5 Cal.Rptr.3d 776].) Its objectives include facilitating public participation in local government decisions and curbing misuse of the democratic process by secret legislation. (*Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 95 [82 Cal.Rptr.2d 452].) The Legislature declared its intent in enacting the Brown Act as follows: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the

agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950.)

To implement these important legislative purposes, section 54953 provides that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953, subd. (a).) The same section states that "[n]o legislative body shall take action by secret ballot, whether preliminary or final." (§ 54953, subd. (c).) To ensure a right of public comment, section 54954.3 provides that at regular meetings, members of the public shall be given an opportunity to directly address the legislative body on any item of interest to the public within the subject matter jurisdiction of the legislative body, before or during the legislative body's consideration of the item, and at special meetings on any item that is described in the notice for the meeting, before or during the consideration of that item. (§ 54954.3, subd. (a).) Although a legislative body may reasonably regulate and limit the amount of time allocated to each speaker, it must ensure that the right of public comment is carried out (§ 54954.3, subd. (b)) and may not prohibit public criticism of the policies or actions of the legislative body (§ 54954.3, subd. (c)).

■ The Brown Act expressly allows a legislative body to consider certain matters in closed session, such as discussions with legal counsel regarding pending litigation (§ 54956.9; see *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 186 [41 Cal.Rptr.3d 200] [settlement agreement discussed and agreed to in closed session]) and sensitive employment or personnel issues (§ 54957, subd. (b)). Section 54957.7 seeks to curb the misuse of closed sessions. Subdivision (a) of section 54957.7 states that "[p]rior to holding any closed session, the legislative body of the local agency shall disclose, in an open meeting, the item or items to be discussed in the closed session." Subdivision (b) of section 54957.7 states that "[a]fter any closed session, the legislative body shall reconvene into open session prior to adjournment and shall make any disclosures required by Section 54957.1 of action taken in the closed session."

Finally, recourse to the courts for judicial relief is authorized in the event a legislative body violates the Brown Act. Section 54960, subdivision (a), provides that any interested person may commence "an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency . . . ." Section 54960.1, subdivision (a), provides

that any interested person may commence an action "by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5 is null and void under this section."

### B. *Attorney Fees Statute and Standard of Review*

The Brown Act gives discretion to the trial court to award attorney fees. The operative provision, section 54960.5, states in relevant part as follows: "A court *may* award court costs and reasonable attorney fees to the plaintiff in an action brought pursuant to Section 54960 or 54960.1 *where it is found that a legislative body of the local agency has violated this chapter.* The costs and fees shall be paid by the local agency and shall not become a personal liability of any public officer or employee of the local agency." (Italics added.)

■ A condition precedent to a plaintiff's recovery of such attorney fees and costs is a violation of the Brown Act. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 686 [98 Cal.Rptr.2d 263].) Where a violation of the Brown Act is found, an award of attorney fees is not mandatory, but is entrusted to the sound discretion of the trial court. (*Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781, 800 [22 Cal.Rptr.2d 641].) "In exercising its discretion as to whether to award fees under this provision, the trial court should consider among other matters 'the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit.' [Citations.]" (*Bell v. Vista Unified School Dist., supra,* at p. 686.) Although a fee award is not mandatory, the discretion of the trial court to deny fees to a successful plaintiff is fairly narrow. "[T]he trial court has the discretion to deny successful Brown Act plaintiffs their attorneys fees, but only if the defendant shows that special circumstances exist that would make such an award unjust." (*Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors, supra,* 112 Cal.App.4th at p. 1327.)

A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 [67 Cal.Rptr.3d 228].)

When two or more inferences can reasonably be deduced from the evidence, the reviewing court has no authority to substitute its decision for that of the trial court. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339].) "In this connection we employ the equivalent of the substantial evidence test by accepting the trial court's resolution of credibility and conflicting substantial evidence, and its choice of possible reasonable inferences." (*In re Executive Life Ins. Co.* (1995) 32 Cal.App.4th 344, 358 [38 Cal.Rptr.2d 453].) "Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain, supra*, at p. 479.)

### C. *Trial Court's Denial of Attorney Fees Under the Brown Act Was Based on Erroneous Finding of No Violation*

The trial court found that no violation of the Brown Act occurred and therefore denied Galbiso's request for an award of attorney fees under that statute. We disagree with the trial court's finding that no violation was shown. In at least two respects, the uncontroverted evidence revealed clear violations of the Brown Act by OPUD. Hence, the trial court's order must be reversed and remanded for further proceedings on the issue of attorney fees under the Brown Act. We now explain our conclusions.

We begin by briefly noting the aspects of the trial court's ruling that were supported by substantial evidence, and thus were not an abuse of discretion even if contrary findings could have been made. With regard to OPUD's use of a printed form to memorialize its adoption of Resolution No. 2005-10, the trial court accepted as reasonable the explanation offered by OPUD (i.e., that the resolution was typed in advance of the meeting as a convenience only and that the inclusion in the typed form of specific voting information, such as who made and seconded the motion and the votes cast, was an inadvertent error). The trial court's determination of this issue was supported by the fact that Resolution No. 2005-10 was in identical form, including the voting information, to Resolution No. 2005-09 that had been voted on by the OPUD Board at a prior meeting. Under the circumstances, it was a reasonable inference that the voting information was inadvertently carried over from the prior version as a clerical error.

With regard to Galbiso's allegation that the action described in Resolution No. 2005-10 was taken in a closed session, the trial court found that it was simply not borne out by the record. In fact, as pointed out by counsel for OPUD at the attorney fees hearing, the transcript of the November 8, 2005 meeting

clearly reflected that the resolution was passed in public session.[8] The trial court so held, and its assessment of the meeting was adequately supported by the record.

In regard to *other* Brown Act issues, however, the trial court erred. At the heart of Galbiso's claim under the Brown Act was her allegation that OPUD denied or interfered with her right to speak at OPUD Board meetings. The trial court held there was no violation of Galbiso's right to public comment under the Brown Act because she actually succeeded in speaking a number of times at the November 8, 2005 meeting, and because she was only told to refrain from speaking when her public comments related to matters that the OPUD Board was entitled to address in a closed session (i.e., the parties' pending litigation).[9]

■ Addressing the second point first, we conclude the trial court erred in its interpretation of the right to make public comment under the Brown Act. Section 54954.3, subdivision (a), provides: "Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body . . . ." This language has been construed to mean that for each agenda of a regular meeting, there must be a period of time provided for general public comment on *any* matter within the subject matter jurisdiction of the legislative body, as well as an opportunity for public comment on each specific agenda item as it is taken up by the body. (*Chaffee v. San Francisco Library Commission* (2004) 115 Cal.App.4th 461, 468–469 [9 Cal.Rptr.3d 336].) In regard to special meetings, an opportunity for public comment must be provided for members of the public "to directly address the legislative body concerning any item that has been described in the notice for the meeting before or during consideration of that item." (§ 54954.3, subd. (a).)

Assuming that public comments are within the parameters described in section 54954.3 with respect to regular or special meetings, there is no provision in the Brown Act that we are aware of that would allow a legislative body to prohibit a member of the public from making public comments at the appropriate time during a public meeting merely because the

[8] A partial transcript of the November 8, 2005 meeting was attached to Mr. Roesti's reply declaration in support of the motion for attorney fees. The complete transcript was already on file with the court in connection with earlier proceedings in the case. No objection was made to reliance on the complete transcript.

[9] The trial court also noted that Galbiso often came to OPUD Board meetings without her attorney present, thus OPUD's counsel (Mr. Sullivan) could not himself ethically engage in any discussions with her about pending litigation.

comments would likely relate to pending litigation. It is true that section 54956.9 permits a legislative body to hold a closed session in order to privately discuss pending litigation with its legal counsel when it is deemed necessary to do so. However, we must construe the exceptions to the open meeting provisions of the Brown Act narrowly and the provisions calling for open meetings and public participation broadly to effectuate the important purposes of the Brown Act. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917 [117 Cal.Rptr.2d 631]; *San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954–955 [196 Cal.Rptr. 45].) Thus, the fact that the public body is entitled to meet and confer privately with its attorney to discuss legal issues and receive confidential legal advice in connection with pending litigation does not preclude a member of the public from expressing comments or concerns relating to the pending litigation during a public session.

■ We note, concerning an analogous provision of the Brown Act authorizing closed sessions to discuss personnel matters (§ 54957), it has been held: "[W]hile the Brown Act permits governing bodies to hold closed sessions about personnel matters, nowhere does it grant those bodies the exceedingly broader authority to silence public speech that may also touch upon related employment issues. As noted above, the sections of the Brown Act . . . that require the Board to hold public meetings grant the public a right to speak 'on *any* item of interest to the public . . . that is within the subject matter jurisdiction' of the Board, without exception." (*Leventhal v. Vista Unified School Dist.* (S.D.Cal. 1997) 973 F.Supp. 951, 958–959; accord, *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1437–1439 [57 Cal.Rptr.3d 885].) Similarly here, OPUD's ability to go into a private, closed session as needed to consult with its attorney on pending litigation did not trump Galbiso's right to make public comments at OPUD's public meetings on matters related to the same pending litigation.

We agree with the general proposition expressed by the trial court that an individual may not, under the guise of exercising his or her right to make a public comment, force a legislative body in open session to "then and there" engage in public settlement discussions with him or her concerning pending litigation when the legislative body is entitled to meet in closed session with its attorney to privately consider and discuss any settlement proposals. (§ 54956.9.) While this proposition is no doubt correct, and hence the legislative body would not be required to respond in open session to such settlement proposals, that does not mean it may prohibit the individual from

presenting his or her public comments simply because the comments relate to pending litigation or a possible basis for settlement thereof.[10]

Yet that was precisely what OPUD did, as the record plainly shows. Prior to the November 8, 2005 meeting, Galbiso sent a letter to Fred Boyles asking for an opportunity to discuss her settlement proposal regarding the foreclosure action, and also requesting that OPUD take specific action at its November 8, 2005 meeting to guarantee reserve sewer capacity for all 88 sewer connections that she was being assessed for on Parcels 56 and 57. A similar letter was sent on behalf of Galbiso by Mr. Roesti to Mr. Sullivan, indicating that Galbiso would be attending the November 8, 2005 meeting and that she would speak concerning the sewer capacity issue. By these letters, the OPUD Board was apprised that Galbiso would attempt to speak at the November 8, 2005 meeting on issues related to the pending litigation.

The agenda for the November 8, 2005 meeting specified that the time for public comment on any item not appearing on the agenda was at the beginning of the meeting. However, the transcript of the meeting reveals that although OPUD was willing to allow Galbiso to speak regarding a specific agenda item (i.e., Res. No. 2005-10, which would authorize a tax sale of Parcels 56 & 57), she was instructed to refrain from making any public comment on issues concerning the parties' pending litigation. In fact, when Mr. Sullivan ascertained that Galbiso's remarks during the public comment period were related to pending litigation and that Galbiso insisted on her right to speak on that subject, he directed that the sheriff be called and the meeting was abruptly recessed to await the arrival of a sheriff's deputy. When a member of the public asked why Galbiso did not have a right to make public comments, Mr. Sullivan responded that it was because "what she wants to talk about we are in litigation over." Similarly, in a letter sent to Galbiso's attorney prior to the January 10, 2006 meeting of OPUD's Board, OPUD's new attorney, Ms. Carlson, stated that "[a]ny attempts by . . . [Galbiso or others] to raise these issues or any other issues related to the pending litigation involving [Galbiso] and [OPUD] at the January 10, 2006 meeting will be deemed disruptive and those persons will be asked to leave." At the January 10, 2006 meeting, when Galbiso was about to begin her public comments, Ms. Carlson warned Galbiso that although general comments may be presented, "[y]ou cannot talk about your ongoing litigation." We conclude, for the reasons explained above, that these actions by OPUD to prevent Galbiso from expressing public comments constituted a violation of the Brown Act provisions.

---

[10] OPUD's attorney was correct when he stated at the attorney fees hearing: "[Galbiso is] allowed to talk. [Galbiso is] allowed to say her piece. What [Galbiso is] not allowed to do is force the Board into settlement negotiations with her in an open session."

The trial court's determination that there was no Brown Act violation was made on the additional ground that Galbiso was able to speak several times at the November 8, 2005 meeting. We disagree. Our review of the transcript of the November 8, 2005 meeting only confirms the fact that OPUD violated the Brown Act. As explained, the Brown Act required that OPUD provide an opportunity at the November 8, 2005 meeting for members of the public to comment on any item within its subject matter jurisdiction. (§ 54954.3.) Contrary to this requirement, Galbiso was told that she could not make any public comment that related to her pending litigation. When she insisted on her right to do so, the sheriff was summoned by OPUD and the meeting was temporarily stopped. During the interlude, there was a brief exchange between Galbiso and Mr. Sullivan, primarily in response to inquiries by the sheriff's deputy, in which Galbiso was able to briefly explain the nature of her proposed comments. When the meeting was resumed, the president of the Board proceeded to specific agenda items without providing Galbiso an opportunity to state her public comments regarding the pending litigation. Later, following a closed session, the meeting got out of control when Galbiso and others in the audience realized that OPUD summarily voted on Resolution No. 2005-10 (to proceed with a tax sale of Galbiso's two parcels) at a time when Galbiso and others were not aware of it, and without any invitation for public comment on that agenda item. Most of Galbiso's comments at the meeting were in the nature of demands for an explanation after the summary vote on Resolution No. 2005-10 occurred. Contrary to the trial court's ruling, we do not believe that these incidents, considered in isolation or cumulatively, could reasonably be viewed as showing that OPUD complied with the public comment requirements of the Brown Act.

Finally, a review of the transcript of the November 8, 2005 hearing shows that the OPUD Board went into closed session in violation of the disclosure requirements of section 54957.7. That section provides that "[p]rior to holding any closed session, the legislative body of the local agency shall disclose, in an open meeting, the item or items to be discussed in the closed session." (§ 54957.7, subd. (a).) Although the OPUD Board referred to the item numbers on the agenda that would be taken up in closed session, such reference was inadequate because the agenda's description of the closed-session items was not in substantial compliance with section 54954.5, and because prior to going into closed session to discuss pending litigation pursuant to section 54956.9, a public body is required to publicly state "the title of or otherwise specifically identify the litigation to be discussed, unless the body states that to do so would jeopardize the agency's ability to effectuate service of process . . . or that to do so would jeopardize its ability to conclude existing settlement negotiations to its advantage." No such disclosure ever occurred. Thus, OPUD failed to make the required public disclosures prior to going into a closed session at the board meeting on

November 8, 2005. This constituted an additional violation of the Brown Act that was established by uncontroverted evidence in connection with Galbiso's attorney fees motion.

■ In conclusion, we hold that the trial court erred in its determination that no Brown Act violation was shown. As discussed above, Galbiso established that OPUD violated the Brown Act by (1) failure to provide an opportunity for public comment, and (2) failure to make the required disclosures prior to going into closed session. Since the trial court assumed that no violation occurred, it never properly exercised its discretion whether to grant attorney fees to Galbiso *as a prevailing party*. We therefore remand the matter to the trial court to consider whether to award attorney fees and costs to Galbiso on her Brown Act claims pursuant to section 54960.5.

In so doing, the trial court "should consider among other matters 'the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit.' [Citations.]" (*Bell v. Vista Unified School Dist., supra,* 82 Cal.App.4th at p. 686.) "[T]he trial court has the discretion to deny successful Brown Act plaintiffs their attorneys fees, but only if the defendant shows that special circumstances exist that would make such an award unjust." (*Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors, supra,* 112 Cal.App.4th at p. 1327.)

II. *Attorney Fees Under the Public Records Act*

We now consider Galbiso's contention that the trial court improperly denied her request for attorney fees under the Public Records Act.

A. *Overview of the Public Records Act*

■ The Public Records Act was enacted "for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425 [121 Cal.Rptr.2d 844, 49 P.3d 194].) Section 6250 states the basic legislative policy as follows: "[A]ccess to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." Under section 6253, subdivision (a), public records are to be "open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided." Under section 6253, subdivision (b), "[e]xcept with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of

records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication . . . ." Exemptions from disclosure are set forth in sections 6254 and 6255 of the Public Records Act.[11] "A state or local agency, upon receiving a request by any person for a copy of public records, generally must determine within 10 days whether the request seeks public records in the possession of the agency that are subject to disclosure." (*Filarsky v. Superior Court, supra,* at p. 426; see § 6253, subd. (c).)

The Public Records Act "sets forth specific procedures for seeking a judicial determination of a public agency's obligation to disclose records in the event the agency denies a request by a member of the public." (*Filarsky v. Superior Court, supra,* 28 Cal.4th at p. 426.) Section 6258 provides that "[a]ny person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter." "After a person commences such a proceeding, the court must set the times for responsive pleadings and for hearings 'with the object of securing a decision . . . at the earliest possible time.' " (*Filarsky v. Superior Court, supra,* at p. 426, citing § 6258.) According to section 6259, subdivision (a), if it appears from the plaintiff's verified petition that "certain public records are being improperly withheld from a member of the public . . . ," the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he or she should not do so. "The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of section 915 of the Evidence Code, papers filed by the parties and any oral argument and additional evidence as the court may allow." (*Ibid.*) "If the court finds that the public official's decision to refuse disclosure is not justified under Section 6254 or 6255, he or she shall order the public official to make the record public." (§ 6259, subd. (b).)

## B. *Attorney Fees Statute and Standard of Review*

Subdivision (d) of section 6259 provides in relevant part: "The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section." An award of costs

---

[11] The disclosure exemptions include "[r]ecords pertaining to pending litigation to which the public agency is a party" (§ 6254, subd. (b)), which has been interpreted narrowly to include only documents specifically prepared for use in litigation (see *Fairley v. Superior Court* (1998) 66 Cal.App.4th 1414, 1421–1422 [78 Cal.Rptr.2d 648]; *Board of Trustees of California State University v. Superior Court* (2005) 132 Cal.App.4th 889, 897–899 [34 Cal.Rptr.3d 82]), and documents precluded from disclosure "pursuant to federal or state law, including . . . provisions of the Evidence Code relating to privilege" (§ 6254, subd. (k)).

and attorney fees pursuant to this provision is mandatory if the plaintiff prevails. (*Filarsky v. Superior Court, supra,* 28 Cal.4th at p. 427.)

■ A plaintiff prevails within the meaning of section 6259, subdivision (d), " 'when he or she files an action which results in defendant releasing a copy of a previously withheld document.' [Citation.]" (*Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1391 [107 Cal.Rptr.2d 29]; see *Belth v. Garamendi* (1991) 232 Cal.App.3d 896, 898 [283 Cal.Rptr. 829].) An action under the Public Records Act results in the release of previously withheld documents "if the lawsuit motivated the defendants to produce the documents." (*Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 482 [23 Cal.Rptr.2d 412]; see *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1344 [64 Cal.Rptr.2d 477].) "Cases denying attorney fees to a plaintiff under the act have done so because substantial evidence supported a finding that the 'litigation did *not* cause the [agency] to disclose any of the documents ultimately made available . . . .' [Citations.]" (*Los Angeles Times v. Alameda Corridor Transportation Authority, supra,* at p. 1391.)

On review, a trial court's decision denying attorney fees under section 6259, subdivision (d), will be upheld if the finding that the plaintiff did not prevail under that section is supported by substantial evidence. (*Rogers v. Superior Court, supra,* 19 Cal.App.4th at p. 482; *Motorola Communication & Electronics, Inc. v. Department of General Services, supra,* 55 Cal.App.4th at p. 1351.) To the extent the issue involves interpretation of the statute or application of the statute to undisputed facts, we apply de novo review. (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 812 [26 Cal.Rptr.3d 92].)

### C. *Trial Court Abused Its Discretion in Failure to Award Attorney Fees Under Public Records Act*

As noted, Galbiso's complaint asserted a violation of the Public Records Act based on the allegation that Fred Boyles denied access to all relevant public records when, "[o]n no less than three occasions, . . . [Boyles] ordered [Galbiso] out of [OPUD's] office." Galbiso sought injunctive relief to prevent such denial of access and to allow her an opportunity to inspect and copy public records. The trial court granted her request for a preliminary injunction.[12] At the hearing on the motion for attorney fees, an important issue was whether the trial court's grant of injunctive relief made Galbiso a prevailing party for purposes of the attorney fees statute in the Public Records Act (i.e., § 6259, subd. (d)).

---

[12] Later, Galbiso's right of access to public records was included in the parties' settlement provisions.

To place the issue in its context, we briefly highlight some of the facts and circumstances that were presented to the trial court in connection with Galbiso's claim for injunctive relief. On October 21, 2005, a letter sent by Mr. Sullivan to Mr. Roesti confirmed the stance that was taken by OPUD: "[Y]our client, [Galbiso], keeps going to the office of my client, [OPUD], wherein she becomes very argumentative and disruptive. [¶] If there is any documentation you desire concerning the cases[,] you may use the discovery method to obtain that information . . . . Please advise [Galbiso] that she is not to come to the [OPUD] office and disrupt the office as she has done in the past." A declaration filed by Ms. Carlson opposing injunctive relief noted that she was informed by Mr. Sullivan "that [Galbiso] was only denied documents which pertain to the existing litigation." A subsequent declaration of Fred Boyles conceded that he asked Galbiso to leave OPUD's business office "after she repeatedly and loudly requested that [Boyles] produce documents [he] was ordered not to produce on the advice of counsel."

On behalf of OPUD, Ms. Carlson's declaration affirmed that Galbiso and Mr. Roesti were informed in December of 2005 (including by Ms. Carlson's letter of Dec. 14, 2005), before Galbiso filed her complaint, that OPUD would comply with any Public Records Act request made by her provided that it was submitted in writing and the requested documents were not exempt from disclosure under the provisions of the Public Records Act. Although written requests would be allowed, it was not clear from Ms. Carlson's declaration or letter whether OPUD continued to take the position that records relating to pending litigation would be treated as broadly exempt from disclosure, as apparently had been the case when Galbiso personally appeared at the OPUD office to inspect documents and was asked to leave.

On February 21, 2006, the trial court granted Galbiso's request for a preliminary injunction on the Public Records Act allegations. The trial court's order specifically required OPUD "to provide [Galbiso] access to its public records, unless the record comes under the litigation exemption to disclosure under . . . § 6254[, subdivision (b)]," and the trial court clarified that said exemption only applied " 'if [a document] was specifically prepared for use in litigation.' " The court's explanation as to the limited scope of the litigation exemption was supported by citation to case authority.

At the hearing on the attorney fees motion, the trial court held that OPUD's refusal to allow Galbiso access to OPUD's office to inspect public records constituted a violation of the Public Records Act. (See § 6253, subd. (a) ["Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided."].) The trial court further acknowledged that injunctive relief had been granted "because [Galbiso] alleged and proved that [she was] being denied access on an improper basis."

Thus, the trial court expressly found, as supported by the record, that Galbiso "was the prevailing party on [the] denial of access theory."[13]

Nevertheless, the trial court denied attorney fees. The trial court believed it could not award attorney fees because the statutory provision authorizing an award of attorney fees (§ 6259, subd. (d)) refers to parties prevailing under "this *section*" (italics added). The trial court explained that section 6259 entails a proceeding in which specifically requested documents are being withheld by a public agency and a judicial determination is necessary to decide whether the documents must be disclosed under the Public Records Act. The trial court held that Galbiso's action was not the type of proceeding described in section 6259 because "there was no allegation [of] withholding any certain document." Instead, Galbiso's claim was based on a general denial of access to *all* records by means of preventing access to the premises for the purpose of inspecting documents. The trial court noted it was "ironic" that the Legislature would allow fees where a public agency improperly withheld specified documents, but not where the agency "denied access entirely" to all public records. Based on this interpretation, the trial court found Galbiso was not a prevailing party within the purview of section 6259, subdivision (d), and the motion for attorney fees was denied.

Although it is true that section 6259, subdivision (d), provides for an award of attorney fees to a plaintiff who prevails "in litigation filed pursuant to this section," we disagree with the trial court's limited interpretation thereof. Section 6259 expressly applies "[w]*henever* it is made to appear by verified petition . . . that certain public records are being improperly withheld from a member of the public," and a judicial determination is necessary to resolve the issue. (§ 6259, subd. (a), italics added.) We believe the language of section 6259 is sufficiently broad to include the present lawsuit. That is, where a means is employed by a public agency to effectively deny access to *all* public records and a lawsuit is filed to remedy the problem, that lawsuit would constitute a claim that "certain public records are being improperly withheld from a member of the public" within the scope of section 6259.

---

[13] In so holding, the trial court implicitly rejected OPUD's claim that the violations were cured prior to the lawsuit as a result of Ms. Carlson's letter of December 14, 2005. Such an implied finding, which would include considerations of weight and credibility of evidence, was within the trial court's discretion as finder of fact. The trial court further noted OPUD had additionally violated the Public Records Act by mandating that requests be made in writing. (See *Los Angeles Times v. Alameda Corridor Transportation Authority, supra*, 88 Cal.App.4th at p. 1392 [written request not required].) Finally, we note that when the trial court found Galbiso had prevailed under her denial of access theory, it implicitly rejected the suggestion by OPUD that Galbiso was asked to leave because she was disruptive. The implied finding was adequately supported in the record and was not specifically challenged on appeal.

Moreover, if that were not the case, a public agency that completely barred access to public records (e.g., by requiring those who request them to leave the premises) would not be subject to the attorney fees provision, but a public agency that "merely" refused to disclose one or two documents would be forced to pay attorney fees to a prevailing plaintiff. We do not believe the Legislature intended such an absurd result. (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462] [statutory interpretation must avoid absurd results the Legislature would not have intended].) Additionally, we interpret section 6259 in keeping with the overall remedial purpose of the Public Records Act to broaden access to public records. (*Los Angeles Times v. Alameda Corridor Transportation Authority, supra*, 88 Cal.App.4th at p. 1392.) Indeed, the very purpose of the attorney fees provision is to provide "protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Filarsky v. Superior Court, supra*, 28 Cal.4th at p. 427.) That is precisely what occurred here when Galbiso prevailed by vindicating her right of access to inspect public records.

In so holding, we appreciate the fact that a person who seeks public records must present a reasonably focused and specific request, so that the public agency will have an opportunity to promptly identify and locate such records and to determine whether any exemption to disclosure applies. (See, e.g., §§ 6253, subds. (a)–(c), 6258, 6259; *Rogers v. Superior Court, supra*, 19 Cal.App.4th at p. 481 ["The request to the agency must itself be focused and specific."].) That principle, however, never came into play here because OPUD's practice of making Galbiso leave the premises when she sought public records effectively barred *any* inspection of documents. Since, as the trial court found, Galbiso was made to leave the premises as a means of denying her access to public records, OPUD cannot be heard to complain that her request for documents was not specific enough. In any event, it is evident that OPUD knew what records Galbiso was seeking, since Fred Boyles's declaration admitted that she sought "documents [he] was ordered not to produce on the advice of counsel."

We are also mindful that the standard test for determining if a plaintiff has prevailed under the Public Records Act is whether or not the litigation caused a previously withheld document to be released. (*Los Angeles Times v. Alameda Corridor Transportation Authority, supra*, 88 Cal.App.4th at p. 1391.)[14] We

---

[14] We do not believe the cases go so far as to say there could never be another basis for finding a plaintiff to be a prevailing party. Indeed, *Belth v. Garamendi, supra*, 232 Cal.App.3d at page 898, states alongside the standard criterion a broader principle affirming that section 6259, subdivision (d), mandates an award of attorney fees "to a plaintiff who prevails in litigation *filed under the California Public Records Act*." (Italics added.)

fully agree with that test and do not doubt that it must be applied in virtually all cases under the Public Records Act. Nevertheless, we believe that under the highly unique circumstances presented here of an unjustified denial of access to *all* public records by means of making Galbiso leave the premises if and when she sought to inspect documents, Galbiso's success in the lawsuit was adequately demonstrated by her vindication of her basic right of access under the Public Records Act.[15] We conclude that Galbiso was a prevailing party entitled to an award of attorney fees under section 6259, subdivision (d), and we will remand for the trial court to determine reasonable attorney fees regarding her Public Records Act claim.

In view of this conclusion, it is unnecessary to address the alternative argument raised by Galbiso that she prevailed as a result of a disclosure of a document (a particular map of the sewer system) that she requested *after* her lawsuit was filed, which document OPUD's attorney claimed did not exist, but was subsequently obtained in the course of deposing OPUD's engineer, Mr. Keller.[16]

III. *Other Issues*

Two issues remain, but only brief comment is necessary. First, Galbiso's challenge on appeal to the trial court's denial of her motion for reconsideration is rendered moot by our disposition of her appeal from the order denying attorney fees under the Brown Act and the Public Records Act. We therefore do not address it. Second, Galbiso argues she is "entitled" as a matter of law not only to an award of attorney fees, but also to a multiplier enhancement of 1.25. We summarily reject the argument that an enhancement or multiplier is mandatory. Although the lodestar adjustment method is the prevailing rule for statutory attorneys fee awards and is applicable in the absence of a clear legislative intent to the contrary (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135–1136 [104 Cal.Rptr.2d 377, 17 P.3d 735]), the application of a fee multiplier is never mandatory but remains a matter reserved to the trial court's sound discretion. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240–1241 [66 Cal.Rptr.3d 680].)[17]

---

[15] Of course, a number of specific records were eventually produced through a written request procedure. In a practical sense, it seems that in the course of resolving these general access issues, specific records began to be made available.

[16] This document was not part of the record on appeal.

[17] We do not address the question of whether the lodestar adjustment method is applicable under the particular attorneys fee statutes in the present case, as that issue was not adequately raised.

## DISPOSITION

The trial court's order denying attorney fees is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to Galbiso.

Vartabedian, Acting P. J., and Cornell, J., concurred.