Filed 10/4/13  Jarvinen v. Giubbolini CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HOLLY JARVINEN | |
| Plaintiff and Respondent, | G047721 |
| v. | (Super. Ct. No. 12V001931) |
| LUIGI GIUBBOLINI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.

Luigi Giubbolini, in pro. per., for Defendant and Appellant.

Severson & Werson and Matthew J. Esposito for Plaintiff and Respondent.

\*                  \*                  \*

Defendant and appellant Luigi Giubbolini appeals from a restraining order issued against him in favor of plaintiff and respondent Holly Jarvinen pursuant to the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.; all further statutory references are to the Family Code unless otherwise stated). He argues the trial court "was not legally qualified to decide the case," there was insufficient evidence supporting the order, and the court erred both in admitting certain photographs due to lack of foundation and in dismissing his self-defense claim. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant began a relationship with each other in 2007. Both parties agree that for at least six to seven months in 2007 they were "dating exclusively." After 2008 the parties remained in regular contact; plaintiff described the relationship as friendship that sometimes involved sexual intimacy. Just one week prior to the incident that is the subject of this action the parties engaged in consensual sexual intercourse.

In September 2012 defendant and plaintiff were at plaintiff's home watching television in separate rooms. After approximately an hour, defendant entered plaintiff's bedroom and began making unwanted sexual advances towards her. He had her pinned down and was continuing his sexual advances while disregarding her commands that he stop and leave her house. After defendant grabbed her hair and shook her neck, plaintiff was able to free one of her hands and struck him in the throat with a "karate chop" movement in an attempt to get him off. He immediately stopped the attack and retreated into the bathroom.

Moments later, defendant emerged from the bathroom enraged at plaintiff for striking him in a manner that "could have killed him" and proceeded to hit her twice in the face. After plaintiff fell onto the bed from the force of the blows, defendant got on top of her, slapped her multiple times in the face, and punched her in the shoulder, back

2

and thigh. Defendant then threw the television remote at her, barely missing her head. Defendant made additional verbal threats, after which he left the house. Plaintiff called 911 and police responded but did not file a report or take pictures. Plaintiff took her own pictures of her injuries.

Two days after the incident, plaintiff filed an application for a restraining order against defendant, including copies of the pictures, in an attempt to obtain a temporary restraining order. A few days later she obtained such an order under the DVPA. She also filed a request for a restraining order, to which defendant filed a response, denying all allegations. He claimed that when plaintiff was on the bed, he leaned over to kiss her goodbye and she struck him with the karate chop. He stated his windpipe was blocked and he could not breathe. When he recovered he tried to explain to plaintiff that she could have killed him but she said she did not realize she could have hurt him so badly. He then left, telling her he did not want to see her again.

Both parties testified at the hearing. At the conclusion of the hearing the court issued a three-year restraining order. It found the parties had a dating relationship from 2007 through the date of the incident. It also found by a preponderance of the evidence that defendant committed domestic violence as defined in section 6203 and did not act in self-defense.

DISCUSSION

1. *Sufficiency of the Evidence*

We review a protective order issued under the DVPA for substantial evidence, that is "'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding. [Citation.]" (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822-823.) "'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . ., resolving

3

every conflict in favor of the judgment.' [Citation.]" (*Id*. at p. 823.) It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the order if, as here, there is evidence to support it. (*People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268.)

The DVPA gives the family law court the authority "to prevent the recurrence of acts of violence . . . and to provide for a separation of the persons involved in the domestic violence . . . ." (§ 6220.) A court may issue a restraining order under the DVPA "if . . . an affidavit and any additional information provided to the court . . . show[], to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300.) Abuse includes "[i]ntentionally or recklessly . . . caus[ing] or attempt[ing] to cause bodily injury" and "[s]exual assault." (§ 6203.)

Defendant claims there is insufficient evidence to show the parties had a dating relationship or the existence of any abuse. Both arguments fail.

Domestic violence includes "abuse perpetrated against" "[a] person with whom the [defendant] is having *or has had* a dating or engagement relationship." (§ 6211, subd. (c), italics added.) A "'[d]ating relationship'" is defined as "frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement independent of financial considerations." (§ 6210)

Defendant's argument he and plaintiff did not have a dating relationship is flawed.[1] He focuses solely on the nature of their relationship at the time the abuse

_____

[1] Defendant maintains the trial court "was not legally qualified to decide this case" (boldface omitted) because he and plaintiff were not in a dating relationship. It is not clear what defendant means by his claim the court was not "qualified." If he is asserting the court had no jurisdiction to hear the case, he is incorrect. The domestic violence restraining order was sought under the DVPA and the superior court has jurisdiction over all proceedings arising under the Family Code. (§ 200.) If he is asserting the court could not hear the case under the DVPA because there was no evidence of a dating relationship, he is again incorrect. Whether there was a dating relationship was one of the disputed factual questions the court had to determine.

4

occurred and ignores the fact they had *previously* been in a dating relationship. Defendant himself testified he and plaintiff dated exclusively for a year and nonexclusively for four years thereafter. He fails to show, or even discuss, why their relationship during this time does not meet the description set out in section 6210.

Plaintiff's reliance on *Oriola v. Thaler* (2000) 84 Cal.App.4th 397 is misplaced. *Oriola* defined a dating relationship for purposes of DVPA. But the *Oriola* definition predates the enactment of section 6210, which controls. (See *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1116.)

Defendant's contention there was insufficient evidence of abuse also fails. Plaintiff submitted a declaration and testified at the hearing about the abuse. She also submitted photographs of her injuries. As shown above, these laid out a prima facie case sufficient to support a finding of abuse. It is irrelevant that defendant's testimony and declaration contradicted plaintiff's. The trial court is the finder of fact and chose to believe plaintiff and disbelieve defendant. (*Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1087, fn. 13 [fact finder may reject witness testimony as part of credibility assessment].) We do not reweigh credibility. (*People v. Xiong, supra,* 215 Cal.App.4th at p. 1268.)

*2. Admission of the Photographs*

Defendant also challenges the trial court's admission of the photographs offered by plaintiff. He maintains there was insufficient foundation, and also contends the bruises were not caused by the abuse but resulted from a car accident in which plaintiff was involved a couple of weeks earlier. Neither claim persuades.

A photograph must be authenticated before it may be admitted into evidence. (Evid. Code, § 1401, subd. (a) [requiring authentication of a "writing"]; *People v. Beckley* (2010) 185 Cal.App.4th 509, 514 [photograph is "'writing'" under Evid. Code, § 250].) "[T]he testimony of a person who was present at the time a film was made that it

5

accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence." (*People v. Bowley* (1963) 59 Cal.2d 855, 859.)

The trial court's determination that a proper foundation has been laid for the admission of evidence will not be disturbed on appeal absent a showing of abuse of discretion. (*County of Sonoma v. Grant W.* (1986) 187 Cal.App.3d 1439, 1450.) An abuse of discretion is "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Carrington* (2009) 47 Cal.4th 145, 195.)

Plaintiff testified she took the photographs herself and they depicted exactly what they purported to show, bruises on her body sustained during the altercation. On top of this, plaintiff produced the camera and phone used to take the photographs, which showed the pictures were electronically dated on the day of the incident. Therefore the photographs were sufficiently authenticated.

Defendant argues the dates on the photographs are susceptible to manipulation and the coloring of the bruises shows they did not appear on the day the photographs were taken. Defendant also argues the color of the bruises[2] did not substantiate the finding they occurred as a result of the abuse. Defendant further offers an extensive discussion of why evidence of the bruises as shown in the pictures is suspect and why it is more believable that they were caused by plaintiff's car accident. With all these arguments defendant is asking us to reweigh evidence, which, as stated above, is not our function. (*People v. Xiong, supra,* 215 Cal.App.4th at p. 1268.)

---

[2] We may not consider the table showing the age of a bruise as determined by its color that defendant appended to the opening brief as it is outside the record. (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1103, fn. 4.)

*3. Self-Defense*

Defendant next argues the trial court erred in rejecting his self-defense claim. He points to the court's findings that both parties "hit each other" (italics omitted) and emphasizes his version of the events. He then leaps to the conclusion this was "mutual combat." This was despite the court's statement it did not "want to use the term mutual." We defer to the court's order when there is substantial evidence to support it, as here. (*Sabbah v. Sabbah, supra*, 151 Cal.App.4th at pp. 822-823.)

Further, once again defendant's contention the appropriate level of review is de novo is incorrect. The trial court's decision to disallow defendant's self-defense claim came from its "application of the law to the facts[, which] is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th. 706, 712.)

To establish he was acting out of self-defense defendant had to prove, among other things, that he reasonably believed that he was in *imminent* danger of suffering bodily injury. (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 82.) Additionally, if through his own wrongful conduct, he created the circumstances under which his plaintiff's attack or pursuit is legally justified, he may not invoke self-defense. (*People v. Randle* (2005) 35 Cal.4th 987, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.)

The record shows defendant's wrongful conduct caused plaintiff's use of violence and that he was not in imminent danger when he retaliated. Defendant was the initial aggressor when he pinned and struck plaintiff before she hit him in the throat. His attack following plaintiff karate chopping him did not occur until after he had removed himself from the situation by retreating into the bathroom. Plaintiff gave no reason for defendant to think she was going to harm him again after he had retreated. Defendant had ample opportunity to leave the residence and remove himself from any potential future danger. Accordingly, the trial court did not act arbitrarily or capriciously by disregarding defendant's self-defense claim. The record shows defendant created the

circumstances causing plaintiff's karate chop to be legally justified and he was not in imminent danger when he retaliated.

*4. Gender Equality in Italy*

In rendering its decision the trial court made a comment to defendant that he could "be a very controlling person" and that "perhaps in your culture or where you[ are] from maybe you treat women differently than here, but that's not the way it [is] here." Defendant, who is from Italy, set out a three-page rebuttal in his opening brief, citing, among other things, examples of women's equality in Italy and the Divine Comedy. We do not rely on the court's comment in reaching our decision nor do we consider plaintiff's discussion of this issue.

## DISPOSITION

The order is affirmed. Plaintiff is entitled to costs on appeal.

THOMPSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

8