Filed 11/6/15; pub. order 12/3/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PACIFIC MERCHANT SHIPPING ASSOCIATION,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BOARD OF PILOT COMMISSIONERS FOR THE BAYS OF SAN FRANCISCO, SAN PABLO AND SUISUN et al.,<br><br>        Defendants and Appellants. | A142634<br><br>(San Francisco City and County Super. Ct. No. CPF-12-512320) |

The California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.)[1] provides for inspection of public records maintained by state and local agencies.  In 2012, the Pacific Merchant Shipping Association (PMSA) petitioned the trial court for a writ of mandate compelling production of certain records, including "pilot logs," held by the designated port agent of the Board of Pilot Commissioners for the Bays of San Francisco, San Pablo and Suisun (Port Agent and Board, respectively).  The Port Agent, who also serves as president of the San Francisco Bar Pilots (Bar Pilots), a private pilots' organization, opposed the petition on the basis that the pilot logs were not public records subject to the CPRA.  The trial court granted PMSA's petition in part and ordered the Port Agent to disclose the pilot logs.  The Port Agent, Bar Pilots, and the Board petitioned this court to overturn the order, and we held that, "while the Port Agent is, for

---

[1] Undesignated statutory references are to the Government Code.

1

at least certain purposes, a public officer, PMSA has not established that the requested [pilot logs] are subject to the CPRA." (*Board of Pilot Commissioners v. Superior Court* (2013) 218 Cal.App.4th 577, 581 (*Pilot Commissioners*).)

Following our decision in *Pilot Commissioners, supra,* 218 Cal.App.4th 577, PMSA submitted a new records request to the Port Agent and the Port Agent produced more than 1,000 square feet of oversized documents. PMSA then filed a motion for attorney fees and costs in this case, contending it was the prevailing party in the litigation. (See § 6259, subd. (d).) The trial court ordered the Port Agent to pay PMSA's fees. Both the Port Agent and the Board appeal. We dismiss the Board's appeal for lack of standing and affirm the fee award against the Port Agent.

## I. BACKGROUND

We will not repeat background information set forth in our prior opinion except as specifically relevant to issues raised in this appeal.

A. *Prelitigation Document Requests*

1. *2011 Requests*

On July 15, 2011, PMSA asked the Port Agent to produce "[a]ll regulations, rules, codes, instructions, descriptions of standard operating procedures, instructions and guidelines specifically utilized or relied upon by the Port Agent" when performing his regulatory duties, which include assigning pilots to vessels. (See Cal. Code Regs., tit. 7, § 218, subd. (d)(1).) On August 17, the Port Agent produced a set of redacted documents with the disclaimer: "[I]t is sometimes difficult to distinguish between the 'private' and 'public' duties of the [Port Agent]. . . . [¶] . . . This production of information is done without conceding that all of the materials provided are, in fact, subject to the obligations arising out of your request under the [CPRA]."

On August 30, 2011, PMSA objected to redactions in the document production, renewed its prior request for records, *and requested additional records* pursuant to the CPRA: "*any and all documents* . . . related to any [of the Port Agent duties listed in section 218 of title 7 of the California Code of Regulations] occurring from January 1, 2010 through to the present." (Italics added.) The Attorney General, responding on

2

behalf of the Port Agent in his official capacity, contended that the response to the July 2011 request was complete. With respect to the request for *new* records, she promised to "provide a narrative of how each duty is performed and list the documents that are created in the performance of that duty" in order to assist PMSA in formulating a more focused records request. However, while repeatedly promised, the narratives and lists were never produced.

2. *2012 Requests for Pilot Logs*

On January 4, 2012, PMSA submitted a new CPRA request for "any and all documents . . . [¶] related to the following: [¶] The annual Pilot Log, which is a document created under the direction of the Port Agent as a memorialization of all pilot assignments to vessels." PMSA described the pilot log as "a multi-page document created by the [Bar Pilots] in the normal course of business to keep track of a Pilot's time . . . [¶] . . . [and] comply with the [Board's] requests to provide the amount of Minimum Rest Period ('MRP') exemptions taken by each [Bar Pilots] pilot." PMSA wrote that the logs identified the assigned pilot, the client vessel and vessel agent, and the starting and ending times and locations of each piloting trip.[2]

The Port Agent acknowledged that "[t]here is a data set that bears headings that are similar to those set forth in your [description]. This data, however, is not used by the Port Agent in assigning pilots to vessels or in preparing or administering the pilots' vacation schedule, nor are they supplied to the [Board] in discharge of any obligation to the Board under the provisions of section 237 of the Board's regulations. [¶] The documents containing this data are documents that are maintained by the [Bar Pilots] in its capacity as a private organization and not in connection with any duties imposed upon the Port Agent . . . ."

---

[2] PMSA later disclosed that it learned about the existence of "pilot logs" in September 2011 by way of a 2010 court filing in a tax case involving a Bar Pilots member. A stipulation of facts filed in that case described the records, defined the column headings, and included copies of two such records as attachments.

On March 26, 2012, PMSA made a public records request to the Board seeking the pilot logs. The Attorney General responded on behalf of the Board: "The document you describe is not in the possession of the [Board]. If the 'Pilot Log' exists, it is not a document prepared, owned, used or retained by the [Board]."

B.    *Litigation*

In *Pilot Commissioners, supra,* 218 Cal.App.4th 577, PMSA explained that its records requests " '[sought] to shed light on the inexplicably murky process of assigning pilots to vessels,' " which allegedly had been a "focal point of inquiry in litigation and policymaking at the federal and state level." (*Id*. at p. 592.) PMSA argued that records revealing pilot assignments and scheduling decisions made by the Port Agent were " 'critical to the provision of safe pilotage.' " (*Id*. at pp. 592–593.) National focus on issues of pilot fitness and pilot fatigue had been generated by two incidents in particular—a 2007 collision of a container ship with the San Francisco-Oakland Bay Bridge, spilling approximately 53,000 gallons of bunker fuel into the San Francisco Bay, and a 2010 collision of an oil tanker and barge in Port Arthur, Texas, releasing approximately 462,000 gallons of oil into the surrounding waters. (See *id.* at pp. 589, 592 & fn. 19.) The Port Arthur incident resulted in an investigation by the National Transportation Safety Board (NTSB). The NTSB determined that the accident was caused in part by pilot error, which in turn was cause by pilot fatigue due to the pilot's medical condition and work schedule. The NTSB also faulted the local board of pilot commissioners for lax oversight. It recommended that state and local pilot oversight boards promulgate "hours of service" rules to prevent pilot fatigue.

The California Business, Transportation and Housing Agency, which has overseen the Board since about 2009, referred the NTSB recommendations to the Board for consideration. On January 26, 2012, PMSA urged the Board to adopt an enforceable minimum rest period rule or a maximum hours of service rule or both in response to the NTSB safety recommendations. Using available data, PMSA argued the rules could be implemented without causing a pilot shortage or delays in service. PMSA sought records from the Port Agent, including "pilot logs," in part to obtain "an exact accounting of

4

actual bridge hours per pilot from the [Bar Pilots]." In a March 2, 2012 letter to the Board, PMSA wrote: "To properly evaluate the issue of pilot fatigue, it is imperative that the Pilot Fitness Committee [of the Board] and stakeholders have an appreciation for the actual hours and conditions under which pilots work." In its March 26 record request to the Board, PMSA again noted that the pilot logs were relevant to "numerous questions regarding . . . management of pilot fatigue and hours of service are presently before the Board, the Governor and the Legislature and are of critical public interest."

On July 3, 2012, PMSA filed a petition for writ of mandate compelling the Port Agent and the Board to comply with the CPRA. The petition sought orders requiring production of the records described in its 2011 and 2012 requests and judicial declarations that "all activities engaged in by the Port Agent related to the general supervision and management of any and all matters related to the business and licensing activities of pilots licensed by the board be considered within the scope of a Port Agent's statutorily-prescribed duties" and that "all documents used, maintained, retained or otherwise in the possession of [the Port Agent] and related to the business and official duties of pilots are public records subject to the CPRA." PMSA sued the Port Agent only in his official capacity, but the Port Agent intervened in his personal capacity, as did the Bar Pilots.

PMSA argued that "the Board and the Port Agent, as a public official, are both a 'state agency' under [section] 6252, and therefore public entities subject to the CPRA."[3] The Attorney General argued that "the Port Agent is not a state officer subject to the [CPRA]": "While [the Board and the Port Agent] acknowledge that [the Port Agent] has specific statutory and regulatory duties as Port Agent, he is not a designated 'officer' of

---

[3] The CPRA provides, with exceptions not relevant here, "each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable." (§ 6253, subd. (b).) Section 6252 defines a " 'state agency' " as "every state office, *officer*, department, division, bureau, board, and commission or other state body or agency," with exceptions not relevant here. (§ 6252, subd. (f), italics added.)

5

the Board (Cal. Code Regs., tit. 7, § 207). . . . [¶] . . . The Port Agent is . . . not subject individually to the Act simply because the Act includes state 'officers' within the definition of state 'agencies.' " Interveners made a similar argument.

The trial court granted the petition in part. The court ruled that the "Port Agent is a public official; among other things, the position was created by the Legislature. . . . The problem here is that the person who acts as Port Agent has *both* a private and public incarnation . . . . [¶] The 'Pilot Logs' are documents used by the Port Agent in the execution of his public duties including, but not limited to, assigning pilots to vessels and preparing and administering pilot vacation time. These are necessary and convenient to the Port Agent's public duties and are public documents. . . . [¶] . . . [¶] Within thirty dates of today's date, the Port Agent must produce, if extant, the requested 'Pilot Logs' from [2002–2011]. [¶] The Court declines to direct Respondents to create further documents for purposes of disclosure here, declaratory relief is not useful, and the Petition is otherwise denied."

The Board, Port Agent, and Bar Pilots sought writ review of the trial court order; PMSA did not. The order was stayed pending appellate review, and the parties stipulated to defer the issue of fees and costs until exhaustion of appellate review.

C.     *Appellate Writ Proceeding*

In the appellate writ proceeding, we held that the Port Agent was a state officer for purposes of the CPRA. We noted, "it was the Port Agent . . . who argued for immunity from suit based on his status as a government official when assigning or supervising pilots . . . . The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, ' "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." ' (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 . . . .) [¶] . . . [¶] . . . The Port Agent fails to explain why one should be permitted to assume the cloak of a state official when it provides protection but to then cast it off in the event it becomes burdensome. We find that the Port Agent must be considered a state

6

officer, at least when performing the official duties provided by statute or Board regulation." (*Pilot Commissioners, supra,* 218 Cal.App.4th at pp. 590–591, fns. omitted.)

The second part of our ruling involved the question of whether specific records were public records subject to disclosure. Only the pilot logs were at issue in the writ proceeding because the trial court had ordered production of those records alone and PMSA had not sought review of the court's denial of the remainder of its petition. (*Pilot Commissioners, supra,* 218 Cal.App.4th at pp. 583, 586.) We held that the trial court erred in ordering disclosure of the pilot logs because PMSA had not established the pilot logs were used by the Port Agent when he performed his official duties. (*Id.* at pp. 596–597.) We also held that the pilot logs were not in the constructive possession of the Board such that the Board would be compelled to disclose them under the CPRA. (*Id.* at pp. 597–600.)

In our disposition, we ordered that the Port Agent, Bar Pilots, and Board recover their costs pursuant to California Rules of Court, rule 8.493(a)(1)(A). (*Pilot Commissioners, supra,* 218 Cal.App.4th at p. 601.)

D. *Post-*Pilot Commissioners *Fee Motion*

In September 2013, the Port Agent produced printouts of the Dispatch Traffic Board (DTB) for the first six months of 2013. A one-page exemplar of the DTB printouts appears to list the names of assigned pilots, identifying information of vessels and their agents, and the starting and ending times and locations of pilot trips. The Port Agent described the records as follows: "The dispatcher and *the Port Agent use the information contained on the* [*DTB*] *to make pilot assignments. . . .* The program lists pilot names from top to bottom in the order that they will be assigned, the topmost name being the next pilot assigned, subject to any necessary adjustments by the dispatcher or the Port Agent. The dispatcher continually enters new information into the program to update the [DTB] as such items as ship arrival or departure times and pilot availability are altered. . . . Approximately every four hours, or six times a day, the dispatcher prints out a copy of the [DTB] as it reads at the time of the printout. The contents of the [DTB] are not retained in the database after a job is completed. Instead, the hard copies that are

7

printed out at four-hour intervals are retained." (Italics added.) In a follow-up letter, the Port Agent explained, "Pilot assignments on the DTB are 'closed out' once the assignment is completed. 'Closing out,' in part, is the process of turning forecasted data as reflected on the DTB into conformed accurate historical data. The 'closed out' confirmed accurate historical data is directed into the system's billing module. Other data, after being 'closed out' by the dispatchers, is directed into a module that the [Bar Pilots], not the Port Agent, uses in discharging its reporting responsibilities to the [Board] . . . [¶] . . . [¶] This latter dataset from the [Bar Pilots'] records includes information similar to that contained in what PMSA called 'Pilot Logs' . . . ." The Port Agent pointedly noted, "To the extent that this request is for copies of the 'Pilot Logs' . . . we are not providing that information. As the Court of Appeal determined in its August 1, 2013 decision, the Port Agent does not use such records in the performance of his duties . . . ."

PMSA filed a motion for attorney fees and costs. PMSA argued it was the prevailing party in the litigation: "Before this lawsuit, the [Board] and its Port Agent refused to acknowledge the Port Agent was a public officer subject to the [CPRA]. . . . [¶] Both this Court and the Court of Appeal ruled that the Port Agent is a public officer subject to CPRA. Moreover, shortly after the appellate opinion was issued in this case, the Port Agent for the first time provided pilot assignment records and portions of an electronic database for his 2013 pilot assignments."

Opposing the fee motion, the Port Agent and the Board argued, "The Court of Appeal directed this court to *deny* PMSA's petition, and ordered that the [Board] and the Port Agent recover their costs against PMSA as prevailing parties. . . . [¶] . . . [¶] The test for determining whether a party has prevailed in a CPRA action . . . is whether the litigation caused a previously withheld document to be released. [Citations.] PMSA has not and cannot meet that standard." The Port Agent and the Board also argued the fee request was excessive, in part because of PMSA's limited (if any) success in the litigation.

The trial court found: "The Court of Appeal held that the Port Agent is a public official subject to [CPRA] requests. . . . [¶] PMSA has presented evidence showing that prior to the litigation, the Port Agent responded to only one of five [C]PRA requests, [and responded to the one] with [a] disclaimer[.] . . . After the litigation, the Port Agent produced voluminous documents in response to PMSA's requests. . . . The evidence supports the finding that the Port Agent responded to PMSA's [C]PRA requests once the Court of Appeal declared the Port Agent a public official." The court denied the motion as to the Board and granted it as to the Port Agent, with a minor modification of the fee amount (the $277,528 request was reduced to $260,608).

## II.    DISCUSSION

Both the Port Agent and the Board appeal the fee award, even though it is directed only to the Port Agent. PMSA moves to dismiss the Board's appeal for lack of standing. We first consider the Port Agent's appeal and then address the unique questions raised by the Board's appeal.

A.    *Appeal by Port Agent*

1.    *Legal Standards*

The fee-shifting provision is one of CPRA's "protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427.) Section 6259 provides: "(a) Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he or she should not do so. . . . [¶] (b) If the court finds that the public official's decision to refuse disclosure is not justified under Section 6254 or 6255 [setting forth exemptions from disclosure], he or she shall order the public official to make the record public. . . . [¶] . . . [¶] (d) The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section. . . ."

9

In *Belth v. Garamendi* (1991) 232 Cal.App.3d 896, 898, we held that "the plaintiff has prevailed within the meaning of [the CPRA] when he or she files an action which results in defendant releasing a copy of a previously withheld document." This has become the " 'standard test' " of whether a plaintiff is the prevailing party in a CPRA action. (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1446.) A plaintiff may satisfy this test even if the litigation results in disclosure of less than all of the documents the plaintiff sought, as long as the disclosure is not "minimal or insignificant." (*Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1391–1392 [plaintiff is prevailing party where court ordered disclosure of one of two documents sought by the plaintiff]; see *Garcia v. Bellflower Unified School Dist. Governing Bd.* (2013) 220 Cal.App.4th 1058, 1066–1067 [similar]; see also *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1397 [partial success does not require apportionment of CPRA fees].)

A CPRA plaintiff does not qualify as a prevailing party merely because the defendant disclosed records sometime *after* the CPRA action was filed. In *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 482–483, for example, fees were denied because the agency had voluntarily disclosed records in response to the pertinent request and additional documents were produced after the lawsuit simply because an additional city department was searched. (See *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1345–1346 [fees denied where prelitigation document production was slightly delayed due to absence of critical personnel].)

On the other hand, the plaintiff need not have obtained a court order compelling production of specific documents in order to qualify as the prevailing party. In *Belth v. Garamendi*, for example, we held that the plaintiff prevailed where the public record was disclosed not because the trial court ordered disclosure, but because the public agency obtained a private party's consent to the disclosure in an effort to resolve the litigation. Applying the catalyst theory of prevailing party status from cases interpreting Code of

10

Civil Procedure section 1021.5, we affirmed the trial court's implicit finding that the plaintiff's lawsuit caused the disclosure. (*Belth v. Garamendi, supra,* 232 Cal.App.3d at pp. 901–902 & fn. 2; see *Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1087–1088 [denial of fees reversed where plaintiff was denied all access to agency's public records by being ordered out of the office]; *Community Youth Athletic Center v. City of National City, supra,* 220 Cal.App.4th at pp. 1446–1447 [fee award appropriate where plaintiff established CPRA violation but documents could not be produced because they were lost or destroyed].)

"We review an attorney fee award generally for abuse of discretion. Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the trial court's discretion, unless the question turns on statutory construction, which we review de novo. [Citations.] . . . [¶] . . . [¶] We defer to any factual findings made by the trial court in connection with the ruling if they are supported by substantial evidence." (*Garcia v. Bellflower Unified School Dist. Governing Board, supra,* 220 Cal.App.4th 4th at p. 1064.)

Here, there is no dispute that the Port Agent disclosed voluminous records relating to pilot scheduling and assignment after resolution of the CPRA litigation on the merits. The records, however, were not produced in response to a court order compelling disclosure of those specific documents. The parties dispute whether the CPRA litigation caused the postlitigation disclosure and whether the later-disclosed documents were responsive to a prelitigation request. We address these issues in turn.

2.      *Legal Impact of Litigation*

The Port Agent argues that in *Pilot Commissioners, supra,* 218 Cal.App.4th 577, this court "did not make a legal determination, applicable to all parties, regarding whether the Port Agent is a state officer within the meaning of the CPRA," but instead applied the doctrine of judicial estoppel. The Port Agent mischaracterizes our holding. Although we relied on judicial estoppel, our holding is applicable to all parties as against the Port Agent.

11

Judicial estoppel applies to a litigant who takes inconsistent positions in judicial proceedings even if the opposing parties in those proceedings are different. " '*Equitable* estoppel "focuses on the relationship between the parties," and is designed to protect litigants from injury caused by "less than scrupulous opponents." *By contrast*, judicial estoppel focuses on "the relationship between the litigant and the judicial system," and is designed "to protect the integrity of the judicial process." . . . The gravamen of judicial estoppel is *not privity*, reliance, or prejudice. Rather, it is the intentional assertion of an inconsistent position that perverts the judicial machinery.' " (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 183, italics added; see *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1459–1460, 1478–1482 [litigant's prior position in action against attorney estopped him from taking contrary position in action against wife and wife's employer].)

In *Pilot Commissioners*, we held that the Port Agent was estopped from arguing that he was not a state officer subject to the CPRA because, in defending suit in federal court (to which PMSA was not a party), he had argued that he *was* a state officer entitled to Eleventh Amendment immunity when assigning pilots. (*Pilot Commissioners,* at pp. 589–591.) We exercised our equitable discretion to apply the doctrine because "[t]he Port Agent fails to explain why one should be permitted to assume the cloak of a state official when it provides protection but to then cast it off in the event it becomes burdensome." (*Id.* at p. 591.) The same reasoning would apply in any other action in which the Port Agent argued that he was not subject to the CPRA, regardless of the identity of the opposing party.[4] In effect, our holding that the Port Agent is a state officer for purposes of applying the CPRA is as much binding authority as any other holding of this court, even though it was based on judicial estoppel rather than an analysis of the

---

[4] The fact that our holding was not binding against the Board is irrelevant. (See *Pilot Commissioners, supra,* 218 Cal.App.4th at p. 591, fn. 17 [Board not barred by judicial estoppel because it was not party to the federal case]; *id.* at 597–600 [Board not required to disclose pilot logs because it did not have constructive possession of them].) The trial court awarded fees against the Port Agent, not the Board, so the effect of our holding on the Port Agent is our only concern.

Port Agent's status under the statutes. Although it is possible that different equitable considerations might apply in another case (see *Pilot Commissioners*, at p. 591 [acknowledging judicial estoppel is an equitable doctrine]), we view such an outcome as highly unlikely.

The Port Agent suggests on appeal that the judicial estoppel holding in *Pilot Commissioners* is binding only on Port Agent Peter McIsaac.[5] We disagree. Both McIsaac and former Port Agent Nyborg argued in federal court that the action against them should be dismissed on the basis that each was acting in his official capacity *as Port Agent* when performing the actions that underlay the complaint. The Eleventh Amendment immunity they sought and obtained as state officers derived only from *their official capacities.* We applied judicial estoppel to "the Port Agent," not to the specifically named individuals. (*Pilot Commissioners, supra,* 218 Cal.App.4th at pp. 590–591.) Accordingly, our decision applies to the *Port Agent* in his or her official capacity, regardless of who holds the position at any point in time.

The Port Agent also argues that PMSA should not be deemed a prevailing party based on the "state officer" holding in *Pilot Commissioners* because PMSA never sought a judicial declaration that the Port Agent was a state officer. As discussed *ante*, however, a CPRA plaintiff may be deemed a prevailing party even if the impact of the litigation did not take the form of court-ordered relief. The Port Agent similarly argues that PMSA should not get fees based on our holding because PMSA did not raise the judicial estoppel argument; instead, this court raised the issue on our own initiative and then asked the parties to address it at oral argument. This circumstance, however, does not

---

[5] According to the federal district court dismissal order, McIsaac served as Port Agent from November 2006 until at least September 2010, and Nyborg served as Port Agent at various times between 1998 and 2010. When PMSA sent its 2011 and 2012 records requests, the Port Agent was Bruce Horton, and Horton was still the Port Agent when PMSA filed its petition. By the time we decided *Pilot Commissioners*, however, McIsaac was once again the Port Agent (*Pilot Commissioners, supra,* 218 Cal.App.4th at p. 581, fn. 1), and he was still the Port Agent when the trial court awarded PMSA its fees and when this appeal was filed.

change the fact that PMSA's CPRA litigation *resulted in* a holding that required the Port Agent to comply with the CPRA when performing his public duties, a result PMSA had sought from the outset.

The Port Agent further contends that the litigation did not result in a significant legal holding because "[n]o one argued before PMSA filed suit, or outside of the context of litigation, that the Port Agent need not comply with the CPRA." This argument ignores the fact that the Port Agent never responded to PMSA's August 2011 request for additional records. Because the Port Agent did not respond to PMSA's records request, PMSA needed to file suit to obtain the records.[6]

Finally, the Port Agent suggests that an award of fees based on our holding in *Pilot Commissioners* is inconsistent with our decision in that writ proceeding to award costs to the Port Agent, the Bar Pilots, and the Board. (See *Pilot Commissioners, supra,* 218 Cal.App.4th at p. 601.) This is incorrect. In *Pilot Commissioners*, we awarded costs pursuant to California Rules of Court, rule 8.493(a)(1)(A), which provides that "the prevailing party *in an original proceeding* [(i.e., the appellate writ proceeding)] is entitled to costs if the court resolves the proceeding by written opinion . . . ." (Italics added.) In contrast, the trial court awarded fees based on PMSA's prevailing party status *in the CPRA litigation as a whole*. We considered only PMSA's request for pilot logs in *Pilot Commissioners*, whereas when the trial court made its fee ruling it considered all of PMSA's requests, including the August 2011 request, and all responses, including the

---

[6] PMSA argues in part that it was a prevailing party because our prior holding resulted in application other public disclosure statutes by a parallel state agency. Specifically, PMSA cites a decision by the Fair Political Practices Commission (FPPC) that cited *Pilot Commissioners* and ruled that the Board's conflict of interest code (§ 87302) applied to the Port Agent. The Attorney General objects to consideration of the FPPC ruling, and has requested judicial notice of a petition for writ of mandate filed in the County of Sacramento Superior Court on March 3, 2015, challenging this ruling. We grant the request for judicial notice. (Evid. Code, § 452, subd. (d).) Because the FPPC ruling does not appear to have been a factor in the trial court's exercise of its discretion and the propriety of the FPPC ruling has not yet been determined, we do not consider it in our decision.

14

Port Agent's postlitigation production of documents. We find no inconsistency between our cost award and the trial court's fee award.

In sum, we conclude the trial court did not err in relying in part on the "state officer" holding in *Pilot Commissioners, supra,* 218 Cal.App.4th at pages 590–591, to support its finding that PMSA was the prevailing party in this litigation.

3.       *Documents Produced as Result of the CPRA Litigation*

The Port Agent argues the trial court made erroneous factual findings about his responses to PMSA's pre- and postlitigation records requests. We conclude that the crux of the trial court's finding is sound: the Port Agent disclosed significant documents postlitigation that he had refused to produce prelitigation.

The Port Agent specifically argues the trial court's statement that "the Port Agent responded to only one of five [prelitigation C]PRA requests" was an "egregious mistake" from which the "court improperly inferred that PMSA was unable to obtain public records to which it was entitled absent litigation. In fact, PMSA served only three, not five, CPRA requests on the Port Agent before it resorted to this unsuccessful litigation. This litigation did not result in a judicial determination that the Port Agent responded improperly to *any* of those three CPRA requests." The quibble over the number of requests is not material.[7] What matters is whether the Port Agent fully responded to PMSA's prelitigation requests *before* the CPRA action was filed.

In *Pilot Commissioners,* we held that " ' " 'Any record required by law to be kept by an officer, or which he keeps as *necessary or convenient to the discharge of his official duty*, is a public record.' " ' " (*Pilot Commissioners, supra,* 218 Cal.App.4th at p. 593, italics added.) In response to PMSA's postlitigation records request, the Port Agent produced DTB printouts that met this standard: the Port Agent expressly confirmed that he "*use*[*d*] *the information* contained on the [DTB] *to make pilot*

_____

[7] The Port Agent counts the July 15, 2011, August 30, 2011, and January 4, 2012 records requests directed to the Port Agent. The trial court apparently also counted the March 26, 2012 records request directed to the Board and a February 6, 2012 letter to the Board.

15

*assignments*." (Italics added.) It necessarily follows that the documents would have been responsive in the first instance to the August 2011 request for "all documents . . . related to" this and other regulatory duties of the Port Agent.

The Port Agent argues PMSA "did not pursue the [August 2011] request . . . in its prayer for relief" in the CPRA petition and therefore should not be permitted to base its prevailing party status on disclosures that were responsive to that request. This is a distortion of the record. The second paragraph of the prayer asked the court to order disclosure of "[(1)] the records sought in the January 4 and March 26, 2012 [CPRA] requests, Exhibits N and W hereto, [(2)] full and unedited copies of the documents partially provided by the Port Agent in response to the July 15, 2011 [CPRA] request, Exhibit E hereto, and [(3)] to provide to [PMSA] an index and the location of all other types of documents and records which are used, maintained or retained by the Port Agent as they related to his statutory duties." Although the third part of the prayer did not specifically cite the August 2011 request, it clearly referred to that request, which was for "any and all documents . . . related to any and all" public duties performed by the Port Agent. The body of the petition discussed both the August 2011 request and the Attorney General's promise to respond with narratives and descriptions of documents, and the letters themselves were attached as exhibits. PMSA had a duty to make a "reasonably" focused request for records, and the Port Agent had a duty to assist PMSA in doing so by identifying records that would be responsive to its request. (§ 6253.1, subds. (a), (b);[8] *Community Youth Athletic Center v. City of National City, supra,* 220 Cal.App.4th at pp. 1419, 1427.) The Attorney General concedes that the Port Agent failed to do so.

---

[8] "When a member of the public requests to inspect a public record or obtain a copy of a public record, the public agency, in order to assist the member of the public make a focused and effective request that reasonably describes an identifiable record or records, shall do all of the following, to the extent reasonable under the circumstances: [¶] (1) Assist the member of the public to identify records and information that are responsive to the request or to the purpose of the request, if stated. [¶] (2) Describe the information technology and physical location in which the records exist. [¶] (3) Provide suggestions for overcoming any practical basis for denying access to the records or information sought." (§ 6253.1, subd. (a).)

Although PMSA expressly prayed for production of the *index* rather than the records, it cannot be faulted for attempting to accommodate the Port Agent, who proposed the alternative production as a way to help PMSA focus its request. Nor should PMSA suffer for the Port Agent's failure to provide the assistance required by the CPRA, and promised by the Attorney General. In any event, PMSA also prayed for "such other and further relief as the Court may deem just and proper." The petition clearly encompassed PMSA's broad requests for the Port Agent's public records.

At oral argument, the Port Agent suggested that he should not be penalized with a fee award simply for making a "good faith" legal argument in the litigation that he was not a state officer and thus not subject to the CPRA. The argument is premised on the Port Agent's mistaken assertion that he fully responded to PMSA's prelitigation records requests: he argues he should not be punished *solely* for raising a good faith legal argument in the litigation after he had fully cooperated before the litigation. As we have just explained, the Port Agent did not fully respond to PMSA's prelitigation requests. While good faith efforts to fully and timely respond to a records request may be relevant to determining whether litigation was necessary to obtain records in light of agency delays (see *Motorola Communication & Electronics, Inc. v. Department of General Services, supra,* 55 Cal.App.4th at pp. 1345–1346), good faith *legal arguments* in opposition to CPRA coverage are hardly comparable. Good faith in making legal arguments shields parties and attorneys from sanctions (Code Civ. Proc., § 128.7, subds. (b)(2), (c)), not from fee awards.

The Port Agent also argues that PMSA "did not pursue the [August 2011] request . . . by challenging the superior court's initial order, which did not discuss or issue any orders regarding that second request." As noted *ante*, the trial court ordered production of the pilot logs only and denied the remainder of PMSA's petition. PMSA understandably did not seek writ review of the trial court order, which was overwhelmingly in its favor: the pilot logs that the court ordered disclosed contained the crucial information PMSA was seeking. PMSA's failure to seek review of the order cannot reasonably be deemed an abandonment of the August 2011 records request.

17

In any event, the DTB records were arguably responsive to PMSA's 2012 request to the Port Agent as well as the August 2011 request. Although the primary target of the 2012 request was the pilot logs, PMSA actually requested "all documents . . . *related to*" the pilot logs. The Port Agent concedes that the DTB records are related to the pilot logs in that they are predecessor records to the pilot logs, containing real-time tentative information that becomes part of the pilot logs once confirmed. The relatedness of the records is apparent from the significant overlapping information the records contain: arrival and departure times of vessels; pilot names in their presumptive or actual order of assignment; and destinations for the vessels, which correlates with the length of the trip. Moreover, as a matter of basic common sense, the records were responsive because they provided information relevant to PMSA's concerns about pilot schedules and related safety issues.

Finally, the Port Agent argues the postlitigation production was not similar to the documents sought in prelitigation requests because they covered different time periods. In its August 2011 request, PMSA sought documents covering the period January 2010 to August 2011 and in its 2012 requests it sought pilot logs for 2002 to 2011. The documents produced postlitigation were from 2013. It makes sense, however, for PMSA to seek the most current records available at the time of each request. The Port Agent does not suggest or demonstrate that records from the various time periods were materially different with respect to PMSA's concerns.

In sum, the trial court did not abuse its discretion in declaring PMSA the prevailing party based in part on the Port Agent's postlitigation document production.

4. *Amount of Fee Award*

The Port Agent argues the trial court erred in failing to apportion the fee award based on PMSA's limited success in the litigation. We disagree. "[W]hile the degree of the plaintiff's success in obtaining the objectives of the litigation is a factor that the trial court may consider in determining an award of reasonable attorney fees under a fee statute [citations], including the CPRA fee statute (§ 6259, subd. (d)), . . . there is no *requirement* that the trial court make an award of attorney fees in an amount that is

18

commensurate with or in proportion to the degree of success in the CPRA litigation." (*Bernardi v. County of Monterey, supra,* 167 Cal.App.4th at p. 1398, italics added.) In *Bernardi*, the court rejected an argument that a full fee award should be reduced by two-thirds because the plaintiff arguably succeeded on only one of her three central demands. (*Id.* at pp. 1395, 1398.) Here, PMSA failed in its effort to compel disclosure of the "pilot logs," but prevailed in its effort to establish the Port Agent was subject to the CPRA and ultimately obtained much of the information it had been seeking in the pilot logs. The value of the legal services performed on behalf of PMSA " ' "is a matter in which the trial court has its own expertise . . . . The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." ' " (*Id.* at p. 1395.) The trial court did not abuse its discretion in setting the fee award amount.

### 5. *Enforceability of the Fee Award*

The Port Agent argues the trial court erred in ordering the Port Agent to pay the fee award. He quotes section 6259, subdivision (d), which provides, in relevant part, "The costs and fees shall be paid by the public agency of which the public official is a member or employee and shall not become a personal liability of the public official." He argues, "Under this language, the person who is serving as Port Agent is not liable to pay an award of attorney fees and costs. The superior court's order was therefore improperly directed to the Port Agent." To the extent the Port Agent is claiming he is not personally liable for the fee award in his individual capacity, we agree. However, nothing in the plain language of the statute excludes liability of the Port Agent in his official capacity. " 'Public agency' " is defined in the CPRA to include "state . . . agency," and " 'state agency' " is defined to include a "state . . . officer." (§ 6252, subds. (d), (f).) In *Pilot Commissioners*, we held that the Port Agent is a "state officer" when performing his official duties. (*Pilot Commissioners, supra,* 218 Cal.App.4th at pp. 590–591.) While the Port Agent suggests he cannot be a "member or employee" of himself as a "state officer," we think the statutory language, reasonably construed, makes a state officer

liable in his or her official capacity to pay a CPRA fee award where the plaintiff prevails in an action against the officer. Therefore, we disagree with the Port Agent's argument that section 6259, subdivision (d) did not authorize the fee award.

To the extent the parties have briefed issues relating to the enforceability of the fee award or the means by which the award may be satisfied, we decline to address the matters because the issues are not ripe for review. Insofar as the record reflects, no effort has yet been made to collect on the award. (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 119–120 [courts lack jurisdiction to render advisory opinions].)

B.    *Appeal by the Board*

As noted *ante*, the Board also appealed from the fee award even though the award is directed only against the Port Agent. PMSA moved to dismiss the Board's appeal on the ground the Board was not aggrieved by the fee award. We grant the motion.

"Any party aggrieved" may appeal an appealable order or judgment. (Code Civ. Proc., § 902; see *Los Angeles Times v. Alameda Corridor Transp. Authority, supra,* 88 Cal.App.4th at p. 1388 [CPRA fee award is appealable under Code Civ. Proc., § 904.1, subd. (a)(1)].) The Board argues it is aggrieved by the fee award because PMSA has argued that "the state" is liable to pay the award against the Port Agent.[9] However, we have already concluded that the manner in which the fee award may be enforced is not ripe for review. The Board cites no authority that a person *potentially* liable for satisfaction of a judgment against another party has standing to appeal the judgment. In fact, the authority is to the contrary. (Cf. *Buffington v. Ohmert* (1967) 253 Cal.App.2d 254, 255–256 [defendant not named in judgment has standing to appeal judgment on *contract* debt against another defendant where codefendants are jointly liable, but no standing to appeal where codefendant is only *potentially* liable as joint tortfeasor]; see *In re Marriage of Tushinsky* (1988) 203 Cal.App.3d 136, 142 [to be " ' "aggrieved," ' " party must have " ' " 'immediate, pecuniary and substantial' " ' " interest in the

_____

[9] At oral argument, PMSA specifically disclaimed any argument that the *Board* would have responsibility for payment of the fee award.

20

judgment].)  Because the Board's liability for the fee award is speculative at best, particularly in light of PMSA's disclaimer, the Board lacks standing to appeal the order and its appeal is dismissed.[10]

### III.  DISPOSITION

The appeal by the Board of Pilot Commissioners is dismissed.  The fee award against the Port Agent is affirmed.  The Port Agent shall bear PMSA's costs on appeal.

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

---

[10] For the same reason, the Attorney General's purported effort to represent "the State" as well as the Board and Port Agent in this appeal is unavailing.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| PACIFIC MERCHANT SHIPPING ASSOCIATION,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>BOARD OF PILOT COMMISSIONERS FOR THE BAYS OF SAN FRANCISCO, SAN PABLO AND SUISUN et al.,<br><br>     Defendants and Appellants. | A142634<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION**<br><br>(San Francisco City and County Super. Ct. No. CPF-12-512320) |


THE COURT:

The opinion in the above-entitled matter filed on November 6, 2015, was not certified for publication in the Official Reports. On November 24, 2015, the California Newspaper Publishers Association and the Los Angeles Times, nonparties, requested publication of the court's decision as authorized by California Rules of Court, rule 8.1120(a). The Attorney General, on behalf of appellants, opposes the request. Good cause appearing, this court grants the request for publication and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).


Date_____          _____P.J.

Superior Court of the City and County of San Francisco, No. CPF-12-512320, A. James Robertson II, Judge.

Kamala D. Harris, Attorney General, John Saurenman, Assistant Attorney General, and Christiana Tiedemann, Deputy Attorney General, for Defendants and Appellants.

Davis Wright Tremaine, Thomas R. Burke, Jonathan L. Segal; Michael C. Jacob; Flynn, Delich & Wise, Clyde & Co. and Conte C. Cicala for Plaintiff and Respondent.