Filed 11/20/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF GILROY,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>LAW FOUNDATION OF SILICON VALLEY,<br><br>    Real Party in Interest. | H049552<br>(Santa Clara County<br>Super. Ct. No. 20CV362347)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**NO CHANGE IN JUDGMENT** |
| LAW FOUNDATION OF SILICON VALLEY,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>CITY OF GILROY,<br><br>    Real Party in Interest. | H049554<br>(Santa Clara County<br>Super. Ct. No. 20CV362347) |

The Law Foundation of Silicon Valley's petitions for rehearing are denied. The court orders that the opinion filed October 23, 2023, be modified as follows:

1. On page five, paragraph one, lines 9-10, the sentence beginning "Law Foundation later agreed" is deleted and replaced with the following sentence:

> Law Foundation later initially agreed to limit its request to video and audio recordings produced from January 1, 2019, through the present.

2. On page 23, paragraph one, lines 1-2, the sentence "Costs in this original proceeding are awarded to petitioner City of Gilroy" is deleted and replaced with the following paragraph:

> The parties shall bear their own costs on appeal. Upon finality of this decision, the temporary stay order is vacated.

> There is no change in the judgment.

_____
Greenwood, P. J.

_____              _____
Danner, J.                                                    Wilson, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF GILROY,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>        Respondent;<br><br>LAW FOUNDATION OF SILICON VALLEY,<br><br>        Real Party in Interest. | H049552<br>(Santa Clara County<br>Super. Ct. No. 20CV362347) |
| LAW FOUNDATION OF SILICON VALLEY,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>        Respondent;<br><br>CITY OF GILROY,<br><br>        Real Party in Interest. | H049554<br>(Santa Clara County<br>Super. Ct. No. 20CV362347) |

## I. INTRODUCTION

Petitioner Law Foundation of Silicon Valley (Law Foundation) is a "nonprofit legal services organization whose mission is to advance the rights of under-represented individuals and families through legal services, strategic advocacy, and educational

outreach." During its investigation of complaints by homeless persons that their personal property was being destroyed during cleanups of homeless encampments, the Law Foundation made numerous public record requests to the City of Gilroy (City).[1]

Dissatisfied with City's responses to its public records request, Law Foundation filed a petition for writ of mandate and complaint for declaratory relief alleging that City had violated the California Public Records Act (CPRA; Gov. Code, § 7920.000 et seq.)[2] In the October 1, 2021 order, the trial court denied the petition for a writ of mandate and granted declaratory relief in part, finding that City had violated the CPRA in responding to Law Foundation's public records requests but rejecting Law Foundation's request for a declaration that City had violated the CPRA by failing to preserve responsive records it claimed were exempt while Law Foundation's public records requests were pending.

Both parties filed writ petitions in this court challenging parts of the trial court's order. In case No. H049552, *City of Gilroy v. Superior Court*, City contends that the trial court erred in granting declaratory relief, failing to find that Law Foundation's claims of CPRA violations were moot, and tentatively finding that Law Foundation is the prevailing party for purposes of awarding costs and attorney fees. In case No. H049554, *Law Foundation v. Superior Court,* Law Foundation argues that the trial court erred in denying Law Foundation's request for a declaration that the City violated the CPRA by destroying responsive records after it received the Law Foundation's CPRA requests.

For the reasons stated below, we determine that (1) the trial court erred in case No. H049552, *City of Gilroy v. Superior Court* by granting declaratory relief on the basis of its findings that City's past conduct in responding to Law Foundation's public records requests violated the CPRA; and (2) the trial court did not err in case No. H049554, *Law*

---

[1] To be consistent with the parties' terminology in their briefs and in the proceedings below, we will refer to unhoused persons as homeless.

[2] The CPRA was previously codified as section 6250 et seq. and was recently recodified and reorganized as section 7921.000 et seq. All further statutory references are to the Government Code unless otherwise indicated.

*Foundation v. Superior Court*, by denying Law Foundation's request for a declaration that City violated the CPRA by failing to preserve responsive records it claimed were exempt while Law Foundation's public records requests were pending. We will therefore issue a writ of mandate directing the trial court to vacate the October 1, 2021 order and to enter a new order denying Law Foundation's petition for writ of mandate and complaint for declaratory relief in its entirety.

## II. FACTUAL BACKGROUND

### A. *Records of GPD Body-Worn Camera Video Footage*

Gilroy Police Department (GPD) receives complaints about homeless encampments that have been established on private or public property, including the property of the Santa Clara Valley Water District (Water District). When requested by the Water District, GPD assists with the cleanup of homeless encampments (also known as sweeps) on Water District property. According to former Chief of Police Scot Smithee, "[d]uring an encampment cleanup, GPD officers proceed in advance of the Water District crews. The GPD officers locate and investigate individuals who have failed to comply with the prior written and oral notices to vacate the premises. Officers make contact with these individuals to investigate potential violations of the law, such as trespass or illegal storage, and direct individuals to collect their belongings and immediately vacate the property prior to the Water District personnel arriving to complete the cleanup." The Water District is responsible for collecting belongings left at the cleanup site and either disposing of them or leaving items of apparent value at the site for homeless persons to retrieve later. GPD collects and stores a few items, such as identification cards.

According to Smithee, GPD officers assisting with homeless encampment cleanups have body-worn cameras (bodycams), which they activate "if they are engaging in a criminal investigation or enforcement action." Video footage generated by GPD officers' bodycams is collected and stored in accordance with GPD's record management

3

system. David Boles, GPD's records manager, is responsible for the collection and maintenance of all GPD records, including video footage from bodycams. Boles is also responsible for responding to public record requests for GPD records. City's records retention policy for GPD records requires bodycam video footage to be retained for one year, then automatically deleted by a computer system unless flagged for preservation. Once a bodycam video is automatically deleted, it cannot be recovered or viewed by GPD.

## B. *Law Foundation's 2018 Public Records Requests*

After receiving complaints from homeless persons that their personal property was being destroyed during cleanups of homeless encampments, the Law Foundation began an investigation that included making numerous public record requests to City. Relevant here, Law Foundation submitted an October 9, 2018 request that included the following: (1) "Request 11: Any and all public records constituting, reflecting or relating to the proactive enforcement of Quality of Life violations between January 1, 2015 through the present"; (2) "Request 18: Any and all public records constituting, reflecting or relating to the number of encampment sweeps conducted between January 1, 2015 through the present"; and (3) "Request 24: Any and all public records constituting, reflecting or relating to the Zero Tolerance Policy regarding the homeless and Quality of Life violations between January 1, 2015 through the present."

City provided responsive materials to Law Foundation's October 9, 2018 public records requests with an October 29, 2018 response from the assistant city attorney that stated in part, "[t]he GPD's law enforcement records generally, and Quality of Life criminal code enforcement records specifically, are exempt from disclosure under the [CPRA]."[3] GPD did not provide any bodycam video footage in response to Law

---

[3] The CPRA exempts " '[r]ecords of complaints to, or investigations conducted by, or records of intelligence information or security procedures of . . . any state or local

4

Foundation's October 9, 2018 public records request, or in response to Law Foundation's subsequent public records requests to GPD dated October 15, 2018, and November 8, 2018, that similarly sought records related to cleanups of homeless encampments. Since GPD's bodycam video footage was determined by the City Attorney to be exempt, Boles did not search for or review any bodycam video footage after receiving Law Foundation's October and November public records requests.

### C. *Law Foundation's May 2019 Public Records Requests*

Law Foundation staff attended a May 2019 homeless task force meeting at GPD where, according to Law Foundation, Chief Smithee stated that all homeless encampment sweeps are videotaped. Law Foundation then submitted a May 20, 2019 public records request to City that requested (1) "All videos taken by the Gilroy Police Department during sweeps in Gilroy conducted between January 1, 2016 and the present;" (2) "All videos taken by the Gilroy Police Department of the encampment sweep behind the Compassion Center on April 26, 2019;" and (3) "All audio recordings by the Gilroy Police Department during sweeps between January 1, 2016 through the present." Law Foundation later agreed to limit its request to video and audio recordings produced from January 1, 2019, through the present.

After City received the May 20, 2019 public records request, City and Law Foundation engaged in a series of communications regarding the scope of the request and City's need to review the videotapes and audio recordings to determine if any fell outside the exemption for records of investigations and investigatory files. City subsequently provided some responsive materials with a June 11, 2019 letter from the assistant city attorney, which informed Law Foundation that its request for GPD bodycam video footage from the homeless encampment sweeps was denied because the bodycam videos were exempt from disclosure.

police agency.' " (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 493 [citing former § 6254, subd. (f), now § 7923.600, subd. (a)] (*National Lawyers Guild*).)

In a June 21, 2019 letter the Law Foundation demanded that City "produce video and audio recordings of sweeps in Gilroy that were not taken during a criminal investigation for a 'specific and concrete' law enforcement purpose." After further communications between the parties, on August 12, 2019, the Law Foundation notified City that it intended to file a petition for writ of mandate seeking a court order to compel City to release GPD video and audio recordings of encampment sweeps occurring between January 1, 2016 through the present. Due to Law Foundation's stated intention of filing a writ petition to obtain release of the bodycam video footage, on August 22, 2019, GPD voluntarily placed a " 'litigation hold' " on the footage to preserve it beyond the one-year retention period.

City then decided to release GPD bodycam video footage from encampment sweeps that did not relate to citations or arrests.[4] After reviewing the bodycam footage, in October 2019 City provided approximately 52 minutes of footage from homeless encampment sweeps that were conducted on June 1, 2018, February 17, 2019, and April 26, 2019. City withheld from disclosure 10 minutes and four seconds of GPD bodycam video footage from encampment sweeps conducted on February 8, 2018, and February 9, 2018, that showed two encounters in which GPD officers issued citations. According to Boles, GPD's records manager, "[a]side from the 10:04 minutes of footage that [City] continued to withhold and the 52 minutes of footage released to [Law Foundation], no other body camera footage from encampment sweeps conducted between January 1, 2016 and May 20, 2019 was located within [City's] possession."

---

[4] We omit any facts or discussion pertaining to City's requirement that Foundation pay for City's redaction of the bodycam videos to preserve individuals' privacy, since the record reflects that City has refunded the fees and the redaction fees are no longer at issue.

## III. PROCEDURAL BACKGROUND

### A. *October 8, 2020 Order*

The parties agree that the trial court performed an in camera review of the 10 minutes and four seconds of bodycam video footage that City had withheld as exempt pursuant to section 7923.600, subdivision (a) exemption for investigatory records. The parties also agree that in the October 8, 2020 order the trial court ruled that the exemption was valid and the footage was properly withheld. The October 8, 2020 order was not included in the record on appeal and is not at issue in the present original proceedings.

### B. *Law Foundation's Petition for Writ of Mandate*

In December 2020 Law Foundation filed a verified first amended petition for writ of mandate and complaint for equitable relief (hereafter, writ petition or petition) alleging that City had committed several violations of the CPRA.

In the writ petition, Law Foundation asserted that City did not inform Law Foundation until July 2020 that it had destroyed potentially responsive GPD bodycam video footage while Law Foundation's public records requests were pending. At that time, City informed Law Foundation that all bodycam video footage prior to August 2019 had been destroyed, with the exception of one June 2018 video that was later provided by City. According to Law Foundation, City "did not put any kind of preservation flag or hold on police body camera footage until August 22, 2019, [and] did not begin reviewing 'potentially responsive video footage' until August 12, 2019."

Law Foundation also asserted that following its May 2019 public records requests for GPD bodycam videos pertaining to homeless encampment sweeps, City did not provide any bodycam videos until October 24, 2019, after a series of communications between the parties regarding City's response to Law Foundation's May 2019 public records requests.

Based on these and other allegations, Law Foundation asserted a cause of action for violations of former sections 6253 and 6253.9 [now sections 7922.500 and 7922.570]

7

and article I, section 3 of the California Constitution.  The alleged violations included City's delay in responding to public records requests, City's failure to search for responsive records, and City's destruction of responsive records while Law Foundation's public records requests were pending.  Law Foundations sought a writ of mandate directing City to produce all requested records not lawfully withheld and also declaratory relief, as follows:  (1) a declaration that Law Foundation had a right to responses to its requests that were compliant with CPRA's time limits and rules regarding extensions of time; and (2) a declaration that City failed to produce responsive records that existed at the time of Law Foundation's requests but were subsequently destroyed.  Law Foundation also sought an award of attorney fees and costs.

City filed an answer to the writ petition affirmatively asserting that Law Foundation was not entitled to the relief requested.

## C. *Trial Court Proceedings*

### 1.  Pretrial Briefing

Before the hearing in this matter, the parties submitted pretrial briefs supported by declarations and documentary evidence.  Law Foundation argued in its pretrial brief that it was entitled to declarations that City's actions were unlawful under the CPRA, as follows:  (1) "City conducted inadequate search(es) for public records, including police video camera footage, responsive to the Law Foundation's [CPRA] requests dated October 9, 2018; October 15, 2018; November 8, 2018; and May 20, 2019 . . .;" (2) "City provided inadequate written response(s) to each of the CPRA Requests, including by failing to specify the exempt records or representing that they no longer existed;" (3) "City unlawfully allowed potentially responsive police video camera records to be destroyed both while the CPRA Requests were pending, and after this litigation commenced;" (4) "City improperly and without notice to the Law Foundation, categorized all police video camera footage of homelessness sweeps as categorically exempt under the CPRA, and declined even to review them until after this litigation was

8

threatened;" (5) "City failed to meet its burden to prove that all withheld records were properly exempt and/or could not be redacted, including those it allowed to be destroyed;" and (6) "City failed to timely respond to the CPRA Requests."

Law Foundation also sought a "[d]eclaration from the Court that an adequate search requires . . . City to watch and listen to a responsive clip of bodycam footage in its entirety before determining that it is exempt from disclosure under the CPRA." Finally, Law Foundation sought "[a]n injunction that enjoins . . . City from destroying records requested under a CPRA Request and deemed exempt for a period of three years after receipt of the CPRA Request." Law Foundation did not argue that a writ of mandate should issue directing City to produce all requested records not lawfully withheld.

In its trial brief, City contended that the writ petition should be denied because its actions in response to Law Foundation's CPRA requests were reasonable and did not violate the CPRA. City also contended that the CPRA did not require City to place a litigation hold on records that were withheld as exempt. Further, City argued that Law Foundation's claims of CPRA violations were moot, because prior to litigation City had provided all responsive GPD bodycam video footage in its possession, except for the 10 minutes and four seconds of footage that the trial court had previously ruled was exempt.

### 2. October 1, 2021 Order

In the October 1, 2021 "order of judgment" the trial court denied the writ petition, granted declaratory relief in part, and denied the request for injunctive relief, as follows: "The Court grants declaratory relief: (1) . . . [C]ity violated the CPRA by conducting an inadequate search related to the Law Foundation's 2018 Public Records Act requests . . .; (2) with respect to the 2018 requests, . . . City had a duty to, but did not, watch the bodycam footage before asserting a blanket exemption when the details of the footage were unclear on their face in order to determine whether the exemption applies, separate the exempt and nonexempt material, if any, and share information derived from the

9

exempt records with the requester as to why any withheld records were exempt rather than a boilerplate response that parrots the law. . . . ; and (3) [City's] response to the November 2018 CPRA request was not timely, occurring 33 days after the request was received."

The trial court denied declaratory relief as to Law Foundation's claims that City had an obligation to preserve records, finding that "City did not violate the CPRA by failing to preserve responsive records upon receipt of the Law Foundation's multiple Public Records Act requests," and "City did not violate the CPRA by failing to preserve responsive body camera footage after placing a litigation hold."

Additionally, the trial court denied "Law Foundation's request for an injunction preventing the City from destroying any footage for three years after receiving a Public Records Act request under the CPRA . . . because it asks the Court to expand the duties imposed upon an agency by the legislature, as the CPRA does not allow for prospective relief for presumed or potential future CPRA violations."

In the October 1, 2021 order the trial court also stated a tentative ruling that costs and attorney fees would be awarded to Law Foundation as the prevailing party because City had produced public records after litigation began and because the court had "granted declaratory relief finding that . . . City violated the CPRA," with a final determination to be made upon separate motions.

**D.** *Petitions for Writ of Mandate*

Both parties filed writ petitions in this court challenging parts of the trial court's order. In case No. H049552, *City of Gilroy v. Superior Court*, City contends that the trial court erred in granting declaratory relief, failing to find that Law Foundation's claims of CPRA violations were moot, and tentatively finding that Law Foundation is the prevailing party for purposes of awarding costs and attorney fees. In case No. H049554, *Law Foundation v. Superior Court,* Law Foundation argues that the trial court erred in

10

denying Law Foundation's request for a declaration that City violated the CPRA by destroying responsive records after it received the Law Foundation's CPRA requests.[5]

In each original proceeding, this court issued a temporary stay and an order to show cause why a peremptory writ should not issue as requested in the petition, and afforded the parties the opportunity for further briefing and oral argument. We also granted the application of the League of California Cities and the California Special Districts Association for leave to file an amicus curiae brief in support of City in each original proceeding.

## IV. DISCUSSION

### A. *Overview of California Public Records Act*

"The California Public Records Act . . . establishes a right of public access to government records. 'Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.) [FOIA], the [CPRA] was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies.' [Citation.] In enacting the statute in 1968, the Legislature declared this right of access to be 'a fundamental and necessary right of every person in this state' ([former] Gov. Code, § 6250 [now § 7921.000])—a declaration ratified by voters who amended the California Constitution in 2004 to secure a 'right of access to information concerning the conduct of the people's business' (Cal. Const., art. I, § 3, subd. (b)(1), added by Prop. 59, Gen. Elec. (Nov. 2, 2004)). [Citation.]" (*National Lawyers Guild, supra*, 9 Cal.5th at p. 492.)

Section 7923.500 provides that the trial court's order under the CPRA, "which either directs disclosure of records by a public official or supports the official's refusal to disclose records, is immediately reviewable by petition to the appellate court for issuance of an extraordinary writ. [Citation.] The standard for review of the order is 'an

---

[5] On the court's own motion, we ordered case Nos. H049552 and H049554 to be considered together for purposes of oral argument and disposition.

11

independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence.' [Citation.]" (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016 [citing former § 6259, subdivision (c)].) In performing our review, we may consider federal " 'legislative history and judicial construction of the FOIA' " in construing the CPRA. (*Ibid.*)

### B. *City of Gilroy v. Superior Court* (H049552)

City contends that the trial court erred in ruling that City violated the CPRA by (1) performing an inadequate search in response to Law Foundation's 2018 public records requests; (2) failing to review GPD bodycam video footage and separating exempt from non-exempt footage; and (3) providing an untimely response to Law Foundation's November 2018 public records request. City also contends that the trial court erred in tentatively ruling that Law Foundation is the prevailing party and may be entitled to an award of costs and attorney fees. Further, City argues that the trial court erred in granting declaratory relief since the court did not order production of records and no additional responsive, non-exempt records can be produced, and therefore the matter is moot.

Law Foundation disagrees, arguing that the trial court did not err in finding that City's conduct in responding to Law Foundation's CPRA requests violated the CPRA, and it was not necessary for the court to find that City was negligent. Law Foundation also argues that the trial court has broad authority to grant declaratory relief with respect to the right to inspect public records. Finally, Law Foundation argues that the trial court did not abuse its discretion in tentatively ruling that Law Foundation is the prevailing party for purposes of an award of costs and attorney fees.[6]

---

[6] We decline the parties' invitation to review the trial court's tentative ruling that Law Foundation is the prevailing party for purposes of awarding costs and attorney fees, and we express no opinion on any future award of costs and attorney fees.

12

We need not address the merits of the trial court's rulings that City violated the CPRA in responding to Law Foundation's public records requests, since, as we will discuss, we determine that the matter is moot and declaratory relief is not available under the circumstances of this case.

### 1. Mootness

" 'It is well settled that an appellate court will decide only actual controversies . . . . We will not render opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal.' " (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866.) "Stated differently, moot cases 'are "[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." [Citation.]' [Citation.]" (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.) "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief. [Citation.]' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 (*MHC*); see also *Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 405 [same].)

Regarding the relief available under the CPRA, this court has stated that "[t]he CPRA provides *no* . . . remedy that may be utilized for any purpose other than to determine whether a particular record or class of records must be disclosed." (*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 127 (*County of Santa Clara*).) Thus, the CPRA "provides no remedy for failure to timely comply with a request for records." (*Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 483.)

Under the FOIA, "after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied. [Citations.]" (*Hajro v. U.S. Citizenship & Immigration Services* (9th Cir. 2016) 811 F.3d 1086, 1103.) Under the CPRA, an action

13

seeking a declaration that the plaintiffs could inspect and copy primary election ballots was deemed moot because the ballots had been recycled and could not be produced in response to a public records request. (*Citizens Oversight, Inc. v. Vu* (2019) 35 Cal.App.5th 612, 615 [exercising discretion to decide moot issue as a matter of public interest].)

In this case, it is undisputed that (1) City has produced all responsive nonexempt GPD bodycam video footage in its possession; and (2) the trial court's prior October 8, 2020 order ruled that the GPD bodycam footage withheld by City was properly withheld as exempt. Since Law Foundation has not raised any issue in this original proceeding as to "whether a particular record or class of records must be disclosed," we cannot grant Law Foundation any effective relief under the CPRA. (See *County of Santa Clara*, *supra*, 171 Cal.App.4th at p. 127.) Accordingly, Law Foundation's claims regarding the propriety of City's past conduct in responding to Law Foundation's public records requests are moot.

### 2. Declaratory Relief

We understand the Law Foundation to contend that the matter is not moot because the trial court had broad authority to grant declaratory relief with respect to whether City's past conduct in responding to Law Foundation's public records requests violated the CPRA. We are not persuaded. The California Supreme Court has instructed that "under the [CPRA], only a person seeking disclosure . . . may seek a judicial declaration regarding the agency's obligation to disclose a document." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 428-429 (*Filarsky*).) "The sole purpose of such an action is to permit the expeditious 'determination of the obligation to disclose records requested from a public agency . . . .' [Citation.]" (*County of Santa Clara*, *supra*, 171 Cal.App.4th at p. 128.)

Here, City's obligation to disclose the 10 minutes and four seconds of bodycam footage withheld as exempt by City was determined in City's favor in the prior October

14

8, 2020 order, which is not at issue in the present original proceeding. Since the CPRA does not provide for declaratory relief other than to determine a public agency's obligation to disclose records, Law Foundation may not seek declaratory relief under the CPRA with respect to the propriety of City's past conduct in responding to Law Foundation's public records requests. (See *County of Santa Clara*, *supra*, 171 Cal.App.4th at p. 128.)

Moreover, Law Foundation has not shown that declaratory relief is available under Code of Civil Procedure section 1060, which "authorizes a declaratory judgment 'in cases of actual controversy relating to the legal rights and duties of the respective parties. . . .' " (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1061 (*SJJC*).) It is well established that the " '[d]eclaratory procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citations.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) Accordingly, "complaining of past acts" by the defendant does not constitute an actual controversy " '*relating to the legal rights and duties of the respective parties*' within the meaning of Code of Civil Procedure section 1060." (*SJJC,* at p. 1062.)

" 'The court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.' (Code Civ. Proc., § 1061.) The trial court's decision to entertain an action for declaratory relief is reviewable for abuse of discretion. [Citation.]" (*Filarsky, supra*, 28 Cal.4th at p. 433.) Since the trial court's grant of declaratory relief in this case was based on Law Foundation's complaints that City's past acts in responding to Law Foundation's public records requests violated the CPRA, we determine that the trial court abused its discretion in granting declaratory relief that is not authorized under either the

15

CPRA or Code of Civil Procedure section 1060. (See *SJJC*, *supra*, 12 Cal.App.5th at p. 1062.)

Law Foundation relies on the decisions in *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385 (*Community Youth*) and *Galbiso v. Orosi Public Utilities Dist.* (2008) 167 Cal.App.4th 1063 (*Galbiso*), for a contrary conclusion, but those decisions are distinguishable.

In *Community Youth*, the appellate court ruled that a city had a duty under the CPRA to disclose a consultant's field survey records because the city had a contractual ownership interest in those records and the right to possess them. (*Community Youth*, *supra*, 220 Cal.App.4th at p. 1429.) The appellate court also ruled that the city had an obligation under the CPRA to produce raw crime data in response to a public records request. (*Id*. at p. 1430.) The trial court's grant of declaratory relief on the basis that the city's responses to these public record requests violated the CPRA was upheld as to both categories of records. (*Id*. at pp. 1429, 1430.)

However, no issue was raised in *Community Youth*, *supra*, 220 Cal.App.4th 1385 regarding whether the public records requests were moot or whether declaratory relief was authorized under the CPRA or Code of Civil Procedure section 1060. "An appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' [Citations.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) And, in any event, the issues raised in *Community Youth* primarily concerned a city's obligation to disclose certain records under the CPRA. (*Community Youth*, *supra*, at p. 1417.) The decision in *Community Youth, supra*, therefore does not support Law Foundation's contention that a trial court has broad authority to grant declaratory relief regarding the propriety of a city's past acts in responding to public records requests under the CPRA where, as here, a public agency's obligation to disclose public records is not at issue.

16

In *Galbiso*, *supra*, 167 Cal.App.4th 1063, the appellate court upheld the trial court's ruling that a public utility district's refusal to allow the plaintiff access to its office to inspect public records violated the CPRA. (*Id*. at p. 1086.) However, the appellate court reversed the trial court's order denying attorney fees to the plaintiff, ruling that she was the prevailing party for purposes of an award of attorney fees under the CPRA. (*Id.* at p. 1089.) No issue was raised in *Galbiso*, *supra*, as to whether the CPRA issue was moot or whether declaratory relief was authorized with respect to the public utilities' past acts in responding to public records requests. Instead, the attorney fees issue was resolved in the plaintiff's favor because "Galbiso prevailed by vindicating her right of access to inspect public records." (*Id.* at p. 1088.)

For these reasons, we conclude the trial court erred in granting declaratory relief with respect to City's past conduct in responding to Law Foundation's public records requests.

## C. *H049554 Law Foundation v. Superior Court*

Law Foundation challenges that part of the trial court's October 1, 2021 order denying its request for a declaration that City violated the CPRA by failing to preserve responsive records it claimed were exempt while Law Foundation's public records requests were pending and prior to court review.

### 1. The Parties' Contentions

Law Foundation argues that the CPRA should be broadly interpreted to impose a duty upon public agencies to preserve all documents responsive to a public records request that have been withheld as exempt for three years, pursuant to the three-year limitations period provided by Code of Civil Procedure section 338. Law Foundation asserts that absent a duty to preserve, public agencies are able "to delay and obstruct the inspection of public records forever by simply allowing an agency to assert a blanket objection and then run out the clock on preservation, even if all or portions of the records actually are not exempt." According to Law Foundation, City violated the CPRA by

17

failing to preserve while the requests were pending numerous bodycam videos that were responsive to Law Foundation's public record requests.

City responds that the trial court did not err because the CPRA is not a records retention statute, and the CPRA does not impose a duty on a public agency to place a litigation hold or retain records while a public records request is pending. City maintains that the retention of public records is governed by specific statutes, which authorized City's records retention policy of automatically deleting bodycam video footage after one year, with certain exceptions such as retaining footage that is evidence in a criminal prosecution. Alternatively, City argues that Law Foundation's requests for disclosure of GPD's bodycam video footage of homeless encampment sweeps were not pending when the footage was automatically deleted.

### 2. Analysis

We agree with City that the CPRA is not a records retention statute since the CPRA lacks any provisions pertaining to records retention. The CPRA is also silent with respect to any obligation on the part of a public agency to keep any particular records or to preserve records after a public records request has been made. The CPRA "itself does not undertake to prescribe what type of information a public agency may gather, nor to designate the type of records such an agency may keep, nor to provide a method of correcting such records. Its sole function is to provide for disclosure." (*Los Angeles Police Department v. Superior Court* (1977) 65 Cal.App.3d 661, 668.)

The Government Code provides the statutory retention periods that apply to a city's retention of public records. In general, the retention period is two years: "Unless otherwise provided by law, with the approval of the legislative body by resolution and the written consent of the city attorney, the head of a city department may destroy any city record, document, instrument, book, or paper, under the department head's charge, without making a copy thereof, after the same is no longer required. [¶] . . .[¶] This

18

section does not authorize the destruction of: [¶] . . .[¶] Records less than two years old." (§ 34090, subd. (d).)

A separate provision applies to video recordings: "Notwithstanding the provisions of Section 34090, the head of a department of a city or city and county, after one year, may destroy recordings of routine video monitoring, and after 100 days may destroy recordings of telephone and radio communications maintained by the department. This destruction shall be approved by the legislative body and the written consent of the agency attorney shall be obtained. In the event that the recordings are evidence in any claim filed or any pending litigation, they shall be preserved until pending litigation is resolved." (§ 34090.6, subd. (a).)

The retention of data from body-worn cameras is expressly governed by Penal Code section 832.18, which provides in part: "[N]onevidentiary data including video and audio recorded by a body-worn camera should be retained for a minimum of 60 days, after which it may be erased, destroyed, or recycled. An agency may keep data for more than 60 days to have it available in case of a civilian complaint and to preserve transparency." (Pen. Code, § 832.18, subd. (b)(5)(A).) The statute also provides that "[e]videntiary data including video and audio recorded by a body-worn camera under this section should be retained for a minimum of two years under any of the following circumstances," which include recordings of officer use of force or officer involved shootings, recordings of an arrest or detention of an individual, and recordings relevant to a complaint against a law enforcement agency or officer. (Pen. Code, § 832.18, subd. (b)(5)(B).) Further, recordings from a body-worn camera that are relevant to a criminal prosecution may be retained for an additional time. (Pen. Code, § 832.18, subd. (b)(5)(C).) However, Penal Code section 832.18 also provides: "This section shall not be interpreted to limit the public's right to access recorded data under the California Public Records Act." (Pen. Code, § 832.18, subd. (d).)

19

City's record retention schedule for GPD bodycam videos is consistent with these statutory provisions, since it provides that police video recordings are retained for one year "unless retained as evidence associated with a crime report."

We recognize Law Foundation's concern that public records that are potentially responsive to a public records request may be deleted while the request is pending. However, as we have discussed, the CPRA does not govern the retention of public records. The CPRA also does not require public agencies to retain records that are potentially responsive to a public records request, and we may not insert such a requirement in the CPRA. Additionally, the CPRA does not impose a duty on public agencies to advise persons requesting public records of the existence of retention statutes. In performing our independent review of the construction of the CPRA, we are mindful that the California Supreme Court has instructed that a court "may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does. 'Our office . . . "is simply to ascertain and declare" what is in the relevant statutes, "not to insert what has been omitted, or to omit what has been inserted." ' " (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 (*Doe*); see also *Rittiman v. Public Utilities Commission* (2022) 80 Cal.App.5th 1018, 1043 [court could not revise a provision of the CPRA]; *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089 [the correct interpretation of a statute is an issue of law, which we review de novo.])

Therefore, we are precluded from construing the CPRA, as Law Foundation argues, to impose a duty upon public agencies to preserve for three years all documents responsive to a public records request that have been withheld as exempt, pursuant to Code of Civil Procedure section 338 [three-year limitations period]. For that reason, even assuming that Law Foundation seeks prospective relief under Code of Civil Procedure 1060, declaratory relief is not available because City has no duty under the

20

CPRA to preserve all documents that have been withheld as exempt. (See *County of Santa Clara*, *supra*, 171 Cal.App.4th at p. 119.)

However, it has been held that an injunction may issue that requires a city to preserve potentially responsive emails while CPRA litigation is pending, subject to the plaintiff posting an undertaking. (*Stevenson v. City of Sacramento* (2020) 55 Cal.App.5th 545, 549.) Law Foundation did not take such action. We do not decide here whether a person requesting public records is precluded from seeking an order staying or enjoining the destruction of public records pursuant to the retention statutes while litigation is pending under the CPRA.

The Law Foundation's reliance on federal decisions construing FOIA is not persuasive, since the federal decisions are inconsistent with regard to a public agency's obligation to preserve records after a FOIA request is made. For example, in *Laughlin v. Commissioner* (S.D. Cal. 1999) 103 F.Supp.2d 1219, 1223 (*Laughlin*), the district court stated: "A government improperly destroys agency records under FOIA only if it destroys them after a FOIA request has been made to the agency. [Citation.]" In *Wadelton v. Department of State* (D.D.C. 2015) 106 F.Supp.3d 139, 147, the district court followed *Laughlin*, *supra,* 103 F.Supp.2d at page 1223, stating that an "agency *is* under an obligation not to destroy records after it receives a FOIA request."

On the other hand, it has been stated that "the bar on *intentionally* destroying material sought by a FOIA request does not forbid an agency from unintentionally destroying FOIA material in accordance with a neutral record retention policy. . . . An agency's routine record retention policy . . . is the paradigmatic example of a non-suspect explanation for destroying a document." (*Pinson v. Department of Justice* (D.D.C. 2017) 236 F.Supp.3d 338, 356, fn. 24.) An agency's failure to place a " 'litigation hold' " on potentially responsive records did not violate FOIA where no showing was made that the agency purposefully destroyed the records to avoid disclosure. (*Houser v. U.S. Department of Health & Human Services* (D.D.C. 2020) 486 F.Supp.3d 104, 114.)

21

Further, Law Foundation's reliance on federal decisions ruling that a public agency may not intentionally destroy documents after receiving a public records request is unavailing, since no issue of intentional destruction to evade disclosure was raised in the present proceedings. (See, e.g., *Chambers v. U.S. Department of Interior* (D.C. Cir. 2009) 568 F.3d 998, 1000 [summary judgment reversed due to issue of material fact regarding whether Department of Interior intentionally destroyed a document after it was requested].)

Finally, we need not address Law Foundation's reliance on state court decisions from other jurisdictions. Although the decisions of our sister states are not controlling on matters of state law, they may be "instructive to the extent we find their analysis persuasive." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 175.) Here, the decisions of sister state courts construing their own statutory schemes for the disclosure of public records or the FOIA do not persuade us that we may insert a records preservation requirement in the CPRA. (See *Doe*, *supra*, 42 Cal.4th at p. 545.)

For these reasons, we conclude that the trial court did not err in denying Law Foundation's request for a declaration that that City violated the CPRA by failing to preserve responsive records it claimed were exempt while Law Foundation's public records requests were pending and prior to court review.

## V. DISPOSITION

In H049552, *City of Gilroy v. Superior* Court: Let a peremptory writ of mandate issue directing the superior court to vacate the October 1, 2021 order and to enter a new order denying Law Foundation's petition for writ of mandate and complaint for declaratory relief in its entirety.

In H049554, *Law Foundation v. Superior* Court: Let a peremptory writ of mandate issue directing the superior court to vacate the October 1, 2021 order and to enter a new order denying Law Foundation's petition for writ of mandate and complaint for declaratory relief in its entirety.

Upon finality of this decision, the temporary stay order is vacated. Costs in this original proceeding are awarded to petitioner City of Gilroy.

_____
Greenwood, P. J.

WE CONCUR:


_____
 Danner, J.




_____
 Wilson, J.




H049552, H049554
City of Gilroy v. Superior Court
Law Foundation of Silicon Valley v. Superior Court

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 20CV362347 |

Trial Judge:                    The Honorable Nahal Iravani-Sani


Attorneys for Petitioner
City of Gilroy:

William D. Ross
David Paul Schwarz
Kypros Gabriel Hostetter
Law Offices of William D. Ross


Attorneys for Real Party in Interest
Law Foundation of Silicon Valley:

Annette Denise Kirkham
Nadia Aziz
Hai Tri Dao
Erika Kay Fairfield
Law Foundation of Silicon Valley

Thomas Philip Zito
Disability Rights Advocates

Neel Chatterjee
Wendell Lin
Megan Deanne Bettles
Faraz Behnamjou
Monte Cooper
Goodwin Procter LLP


Attorney for Amicus Curiae
League Of California Cities,
California Special Districts Association:

Donald A. Larkin
Office of the City Attorney


H049552
City of Gilroy v. Superior Court

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: 20CV362347

Trial Judge:                                    The Honorable Nahal Iravani-Sani


Attorneys for Petitioner
Law Foundation of Silicon Valley:               Nadia Aziz
                                                Hai Tri Dao
                                                Brian T. Nichols
                                                Law Foundation of Silicon Valley

                                                Thomas Philip Zito
                                                Disability Rights Advocates

                                                Neel Chatterjee
                                                Wendell Lin
                                                Megan Deanne Bettles
                                                Faraz Behnamjou
                                                Monte Cooper
                                                Goodwin Procter LLP

Attorneys for Real Parties in Interest
City of Gilroy:                                 William D. Ross
                                                David Paul Schwarz
                                                Law Offices of William D. Ross

                                                Andrew L. Faber
                                                Jolie Houston
                                                Berliner & Cohen

Attorney for Amicus Curiae
League Of California Cities,
California Special Districts Association:        Donald A. Larkin
                                                Office of the City Attorney


H049554
Law Foundation of Silicon Valley v. Superior Court